**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 9 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

COMANCHE INDIAN TRIBE OF
OKLAHOMA,

        Plaintiff-Appellant,

    v.

49, L. L. C., an Oklahoma Limited
Liability Company,

        Defendant-Appellee,

AMERICAN ARBITRATION
ASSOCIATION,

        Defendant.

No. 03-6167

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. CV-03-18-R)**

---

Olin Joseph Williams (Gary S. Pitchlynn with him on the briefs) Pitchlynn &
Morse, P. A., Norman, Oklahoma, for Plaintiff-Appellant.

John J. Gruttadaurio (Melvin L. McDaniel, Oklahoma City, Oklahoma, with him
on the briefs) Filzer & Gruttadaurio, P.L.L., Maitland, Florida, for Defendant-
Appellee.

---

Before **BRISCOE** , **BALDOCK** , and **TYMKOVICH** , Circuit Judges.

---

**TYMKOVICH** , Circuit Judge.

---

The Comanche Indian Tribe of Oklahoma ("the Tribe") appeals an order staying proceedings in the district court and compelling arbitration of its dispute with 49, L.L.C. ("49"). Lacking jurisdiction, we dismiss the appeal.

## I. Factual Background

The underlying dispute in this case relates to a series of contracts that the parties entered into between November 2000 and January 2001. Without delving into detail, those contracts provided that 49 would lease gaming machines to the Tribe, and the Tribe would offer those machines for play at gaming casinos located on tribal land, including a new gaming facility that had not yet been constructed. The contracts also provided that 49 would loan to the Tribe $3 million for the building of the new gaming facility. 49 leased the machines and loaned the money. In July 2001, however, a dispute arose and the Tribe demanded that 49 remove its machines, which it did. Pursuant to an arbitration clause, 49 then submitted a demand for arbitration, alleging that the Tribe had breached the contracts in numerous ways.[1]

---

[1] The arbitration clause reads: "In the event of any dispute hereunder between [the Tribe] and 49, the parties agree to submit any such dispute, including but not limited to, any issue of contract interpretation or of Federal law, to arbitration in Oklahoma County, State of Oklahoma, in accordance with Arbitration Procedures attached hereto . . . ." Aplt. App. at 30, 45.

The Tribe moved to dismiss the demand for arbitration. The Tribe argued in part that it had not effectively waived its sovereign immunity because the Tribe's Chairman, who was signatory to the contracts, did not have the necessary authority to enter the contracts, and thus the waiver of sovereign immunity contained in the contracts was not valid.[2] Shortly after filing its motion to dismiss the demand for arbitration, the Tribe filed suit in federal district court seeking declaratory and injunctive relief, including an order restraining the arbitration panel from exercising jurisdiction. The Tribe made numerous arguments to the district court, all of which were aimed at nullifying the contracts and thus preserving the Tribe's claims of sovereign immunity.[3] 49 filed a

[2] The waiver of sovereign immunity clause reads in relevant part: "[The Tribe] does not waive, limit or modify its sovereign immunity from unconsented suit or judicial litigation, except that [the Tribe] explicitly warrants and represents to 49, as a material inducement to cause 49 to enter into this Agreement and perform the obligations 49 has agreed to perform hereunder, that any disagreement or dispute between the parties as to the interpretation, enforcement or breach of this Agreement, or the parties' rights or obligations thereunder shall be resolved pursuant to [binding arbitration administered by the American Arbitration Association]." Aplt. App. at 30, 45.

[3] The Tribe argued the contracts were invalid for three reasons: (1) the contracts were "management contracts" under the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2711, thus requiring approval by the National Indian Gaming Commission, which approval had not been received; (2) the contracts "encumbered" the Tribe's land for more than seven years, thus requiring approval by the Secretary of the Interior under 25 U.S.C. § 81(b), which approval had not been received; and (3) the contracts violated Article XII, § 1 of the Tribe's Constitution because the Tribe's Chairman had allegedly entered into the contracts without express authorization from the Comanche Tribal Council. Aplt.
(continued...)

-3-

counterclaim seeking damages and a declaration that the arbitration panel had jurisdiction to hear the underlying breach of contract claim. 49 separately moved to stay the proceedings and compel arbitration. The district court rejected the Tribe's arguments, finding instead that all but one of the contracts were valid and that the Tribe had waived its sovereign immunity. Accordingly, the district court stayed the proceedings and compelled arbitration. This appeal followed.

## II. Appealability of Stay Order under the Federal Arbitration Act

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq*., manifests a "liberal federal policy favoring arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (quotations omitted). Section 16 of the FAA governs our review of a district court's decision to stay proceedings in favor of arbitration. Under § 16(a)(3), a party may appeal a "final decision with respect to an arbitration that is subject to this title." Section 16(b)(1), however, states that "an appeal may not be taken from an interlocutory order granting a stay of any action under section 3 of this title." Thus, the issue in this case is whether the district court's order was a "final decision with respect to an arbitration" under § 16(a)(3) or an "interlocutory order granting a stay" under § 16(b)(1). The one is immediately appealable, the other is not.

---

[3](...continued)
App. at 17–20.

-4-

Before we reach this question, however, we must first address the Tribe's argument that the FAA does not even apply in this case.[4] The FAA applies to all arbitration agreements "involving commerce," 9 U.S.C. § 2, and "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The requirement that the underlying transaction involve commerce "is to be broadly construed so as to be coextensive with congressional power to regulate under the Commerce Clause." *Foster v. C.F. Turley, Jr.*, 808 F.2d 38, 40 (10th Cir. 1986) (citations omitted). The Supreme Court has stated that the FAA's "involving commerce" requirement "reaches not only the actual physical interstate shipment of goods but also contracts relating to interstate commerce." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 n.7 (1967) (quoting H.R. Rep. No. 96, 68th Cong., 1st Sess. 1 (1924)); *see also Allied-Bruce Terminix Cos., Inc., v. Dobson*, 513

---

[4] The FAA alone cannot confer subject matter jurisdiction on the federal courts without an independent jurisdictional basis. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983) (noting that the FAA requires an independent basis for subject matter jurisdiction). In this case, the Tribe's district court complaint was based in part on the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 *et seq.*, and 25 U.S.C. § 81. Thus, the district court had jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction). Further, contrary to the Tribe's assertion, 9 U.S.C. § 4 does not require that assert a separate and independent jurisdictional basis from that asserted by the Tribe.

U.S. 265, 273–74 (1995) (holding that "involving commerce" is the functional equivalent of "affecting commerce").

In this case, 49 has its principal place of business in Illinois, while the Tribe is a federally-recognized Indian Tribe located in Oklahoma. The contracts between the parties therefore relate to and affect interstate commerce. This conclusion is bolstered by the statement of 49's counsel at oral argument that the gaming machines it leased to the Tribe originated in California. *See, e.g., Allied-Bruce*, 513 U.S. at 282 (finding that § 2's "involving commerce" requirement was met where the parties were from different jurisdictions and the materials at issue came from outside the forum state). We therefore hold that the contracts at issue relate to interstate commerce, and the FAA applies to this dispute.

The Tribe argues next that, even if the FAA applies, the district court's order is an appealable "final decision" under § 16(a)(3). We reject this argument. In *Green Tree Financial Corp.–Alabama v. Randolph*, the Supreme Court held that the term "final decision" as used in § 16(a)(3) means "a decision that ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." 531 U.S. 79, 86 (2000) (citations and quotations omitted). The district court in *Green Tree* had dismissed the claims with prejudice, leaving nothing for the court to do except execute judgment, and thus "dispos[ing] of the entire case on the merits and [leaving] no part of it pending before the court." *Id.*

-6-

In such circumstances an appeal was allowed under § 16(a)(3).  The Court noted, however, that "[h]ad the District Court entered a stay instead of a dismissal in this case, that order would not be appealable." *Id.* at 87 n.2 (citing 9 U.S.C. § 16(b)(1)); *see also Apache Bohai Corp., LDC v. Texaco China, B.V.*, 330 F.3d 307, 309–10 (5th Cir. 2003) (interpreting *Green Tree* and holding that the district court's stay of proceedings pending arbitration was not appealable under § 16(b)(1)).

Here, rather than dismissing the case, the district court entered a stay pending arbitration.  We therefore have no difficulty in holding that the district court's order is not appealable at this time.  Although it is true that the district court made substantive rulings with respect to issues such as IGRA and signatory authority, it did so for the limited purpose of determining whether the arbitration clause in the contracts was valid and enforceable.[5]  Having decided that all but one of the contracts were valid, the court then did exactly what it was required to

---

[5] The Tribe argues that we have appellate jurisdiction because the Tribe is challenging Chairman Wauqua's authority to bind the Tribe to the agreement to arbitrate.  However, in the absence of a "final decision" under § 16(a)(3), this court does not have appellate jurisdiction simply because the district court may have erred in its determination regarding an issue that goes to making of the agreement to arbitrate.  The FAA "evidences a pro-arbitration tilt, which requires that . . . the party opposing arbitration . . . bear the initial consequence of an erroneous district court decision requiring arbitration." *ATAC Corp. v. Arthur Treacher's, Inc.*, 280 F.3d 1091, 1101 (6th Cir. 2002) (citation and quotation omitted).

do under the FAA: it stayed the proceedings and compelled arbitration. 9 U.S.C. § 3.[6] In so doing, the district court did not dispose of the entire case on the merits. In fact, the district court specifically stated in its order that it would not consider the Tribe's motion to dismiss 49's counterclaim because it was "premature," indicating that the district court understood it was not disposing of the case entirely. The court, moreover, also ruled in the Tribe's favor concerning one of the contracts. Following the arbitrator's determination on the underlying breach of contract claim, the Tribe may return to the district court to seek a review of the award under the criteria laid out 9 U.S.C. § 10. Following such a review, the Tribe (and 49) may appeal to this court and raise challenges to the district court's order, including the Tribe's argument that the arbitration clause is unenforceable because it has not effectively waived its sovereign immunity. *See Pioneer Properties, Inc. v. Martin*, 776 F.2d 888, 891 (10th Cir. 1988).

### III. Conclusion

---

[6] This section reads: "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall* on application of one of the parties *stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement*, providing the applicant for the stay is not in default in proceeding with such arbitration." (emphasis added).

The district court's order staying the proceedings and compelling arbitration was not a final decision on the merits. As such, we lack jurisdiction over this appeal under 9 U.S.C. § 16(b)(1). Accordingly, we DISMISS the appeal.