Kenneth W. **EDWARDS**, Plaintiff,

v.

**BLOCKBUSTER INC.**, Defendant.

No. 05–CV–215–P.

United States District Court,
E.D. Oklahoma.

Nov. 17, 2005.

Mark L. Edwards, McAlester, OK, for Plaintiff.

Michael L. Raiff, Dallas, TX, Robert C. Walters, Theresa Noble Hill, Colin H. Tucker, Rhodes, Hieronymus, Jones, Tucker & Gable, Tulsa, OK, for Defendant.

## ORDER

PAYNE, Chief Judge.

Now before the court is the defendant, Blockbuster Inc.'s Motion to Compel Indi-

vidual Arbitration, Plaintiff's Response to said motion, and Defendant's Reply.

The facts in the instant case are undisputed. On January 1, 2005, the defendant, Blockbuster Inc. ("Blockbuster"), ended its extended viewing policy, sometimes referred to as a "late fee policy," and no longer charges customers an extended viewing fee, or late fee, if a customer chooses to keep the rental item past the due date. If a customer decides not to return the rental item, the rental is converted to a sale on the eighth day past the original due date (the "Autosale"), and the customer is charged an additional amount for the selling price of the product, less the initial rental fee already paid. The customer then has thirty days from the sale date to return the product and receive a refund or credit for the amount charged. The customer is charged a $1.25 Restocking Fee for costs associated with Blockbuster removing the product from rental, converting it to a sale, and then undoing the sale transaction and returning the product to rental.

Blockbuster's promotion and advertisement of its "End of Late Fees" Program became the subject of an investigation by the attorney generals of forty-seven states and the District of Columbia. In late March 2005, Blockbuster resolved all of these claims by entering into an agreement, called the Assurance of Voluntary Compliance ("AVC"), with the attorney generals. In the AVC, Blockbuster specifically denied the allegations of the attorney generals, but agreed to take the measures specified in the AVC so the dispute would be fully resolved. In addition to providing for specific enhancements to the ways that Blockbuster discloses the terms of the "End of Late Fees" Program, the AVC also gives customers an opportunity to obtain a refund of Autosale and Restocking Fees.

On March 29, 2005, the various attorney generals held press conferences and issued news releases in regard to the AVC. Drew Edmonson, the Oklahoma Attorney General, announced that the agreement had been reached and described certain of its provisions, including the refund mechanism. As a result of these various announcements, the AVC was prominently featured in news reports the following morning. Most major newspapers carried the story, including the Daily Oklahoman, Dallas Morning News, and the Associated Press. In addition, the AVC was the subject of several television news reports on CBS, CNBC, and ABC's "Good Morning America."

Later that day, March 30, 2005, Plaintiff, the brother of Plaintiff's counsel, entered a Blockbuster store in McAlester, Oklahoma and rented a movie. This was not the first video Plaintiff had rented under the "End of Late Fees" Program. In fact, Plaintiff had rented several videos since January 1, 2005, without ever incurring a Restocking Fee or Autosale charge. Defendant contends, however, as soon as the AVC became a prominent news story, Plaintiff decided to keep the video he had rented for just long enough to incur a $1.25 Restocking Fee. Two days after he was charged the $1.25 Restocking Fee, Plaintiff filed this putative class action.

Defendant argues that "rather than avail himself of the simple refund mechanism under the AVC, Plaintiff has decided to litigate this issue, and importantly, to do so through a putative class action. But his class action allegations conflict with the explicit terms of the arbitration provision contained in the Blockbuster Membership Agreement." (Defendant's Motion to Compel Arbitration at 3).

The Blockbuster Membership Agreement prohibits classwide arbitration and judicial class actions:

To fairly resolve any dispute arising between you and Blockbuster Inc. regard-

ing your membership, account, fees, any transaction with Blockbuster Inc., or any Blockbuster policies, you and Blockbuster Inc. agree that any claims of these types by either you or Blockbuster Inc. shall be settled exclusively by binding arbitration governed by the Federal Arbitration Act and administered by the American Arbitration Association under its rules for the resolution of consumer-related disputes, or under other mutually-agreed procedures. Because this method of dispute resolution is personal, individual, and provides the exclusive method for resolving such disputes, you further agree that you will not participate in a class action, or class-wide arbitration for any claims covered by this agreement.

■ The record reveals that for more than four years, this arbitration provision has appeared in the one-page membership application that all prospective customers must sign to establish a rental account with Blockbuster. As a result, it governs the membership accounts of millions of Blockbuster customers nationwide, and therefore also governs rental transactions covered by Plaintiff's class claims. Plaintiff admits in his discovery responses that he signed with Blockbuster in 2002, after the introduction of the arbitration agreement. However, Plaintiff attempts to avoid the effect of this undisputed evidence by complaining that "he has not received an actual copy of the application/contract between himself and Defendant." (Plaintiff's Resp. at 3). The court finds, however, there is no requirement pursuant to either the FAA, or caselaw, that Blockbuster produce a signed version of the Agreement. Although the FAA "requires arbitration agreements to be in writing, it does

not require the writing to be signed." *Simon v. Smith Barney, Harris Upham & Co.*, 1989 WL 53919, at *3 n. 3 (W.D.Okla. Jan. 11, 1989) *citing (9 U.S.C. § 2); see also Tinder v. Pinkerton Security, 305 F.3d 728, 736 (7th Cir.2002) ("Although § 3 of the FAA requires arbitration agreements to be written, it does not require them to be signed."); Valero Refining, Inc. v. M/T Lauberhorn,* 813 F.2d 60, 63–64 (5th Cir.1987) (rejecting argument that arbitration agreement was *unenforceable because the defendant did not produce a signed document and noting that there is no signature requirement under the FAA); Johnson v. Long John Silver's Restaurants, Inc.,* 320 F.Supp.2d 656, 664 (M.D.Tenn.2004) (enforcing arbitration agreement after finding that "[i]t is more likely than not that [the plaintiff] signed an agreement to arbitrate on the day he filled out his paperwork."). Therefore, the court finds that while Defendant has not submitted the application actually signed by Plaintiff, such a submission is not required. It is undisputed that Plaintiff would have been unable to obtain a movie rental without signing the appropriate application which contained the clause in question.

■ The court further finds the individual arbitration requirement contained in the Blockbuster Membership Agreement is valid and fully enforceable. The Agreement states that it shall be governed by the Federal Arbitration Act ("FAA"). Additionally, courts have recognized that the FAA applies to all arbitration agreements involving interstate commerce, such as the Agreement at issue in this case. See *Comanche Indian Tribe of Oklahoma v. 49, L.L.C.,* 391 F.3d 1129, 1132 (10th Cir. 2004).[1] It is well established that the FAA

---

1. The Blockbuster Membership Agreement, which governs rental transactions in every state, involves interstate commerce. The interstate character of the Agreement is further evidenced by the fact that, in this case, it was

entered into between an Oklahoma resident and an out-of-state corporation. *Southland v. Keating,* 465 U.S. 1, 10–11, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *Comanche,* 391 F.3d at

embodies a "liberal federal policy favoring arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). The Act creates a "presumption in favor of arbitrability and courts must resolve all doubts" in favor of arbitration. *Shankle v. B–G Maintenance Mgmt. of Colorado*, 163 F.3d 1230, 1233 (10th Cir.1999). Under the FAA, a court must compel arbitration pursuant to the terms of the parties' agreement if (1) a valid, enforceable arbitration agreement exists, and (2) the asserted claims are within the scope of that agreement. 9 U.S.C. § 4.

■ To further the FAA's strong pro-arbitration policy, the Act limits the grounds upon which a court may refuse to enforce an arbitration agreement. *Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). *("[T]he basic purpose of the Federal Arbitration Act is to overcome courts' refusals to enforce agreements to arbitrate.")* Specifically, Section 2 of the FAA requires that any defense to arbitration must be applicable to contracts generally. See 9 U.S.C. § 2. In other words, the FAA preempts any rule or decision of state law that would subject arbitration agreements to more burdensome contract formation requirements than that required for any contractual topic. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219–220, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).

■ Application of these principles reveals the Blockbuster Membership Agreement is valid and fully enforceable. The Agreement mutually binds the customer and the company to arbitrate all disputes related to fees, transactions, or policies. Furthermore, the terms of the arbitration are customer-friendly. The Agreement

states the arbitration will be governed by the American Arbitration Association's ("AAA") rules for consumer-related disputes.

■ Nor does the Agreement's prohibition on participation in a class action, or class arbitration proceedings, render the Agreement unenforceable, or unconscionable. Such provisions are a common feature of consumer arbitration agreements, and numerous courts have recognized that they are valid and fully enforceable. *See, Jenkins v. First Amer. Cash Advance of Georgia, LLC*, 400 F.3d 868, 877–78 (11th Cir.2005); *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 175–75 (5th Cir.2004); *Carter v. Countrywide Credit Indus. Inc.*, 362 F.3d 294, 301 (5th Cir.2004); *Livingston v. Associates Finance, Inc.*, 339 F.3d 553, 559 (7th Cir. 2003); *Snowden v. CheckPoint Cashing*, 290 F.3d 631, 638 (4th Cir.2002); *Johnson v. West Suburban Bank*, 225 F.3d 366, 378 (3d Cir.2000).

Moreover, in light of the AVC's refund provision, there is no consumer interest in preserving Plaintiff's ability to participate in class proceedings. The AVC remedies any alleged injury to Oklahoma consumers, and, in addition, provides for remedial measures to enhance Blockbuster's disclosure of the "End of Late Fees" Program's terms and conditions. Even with regard to attorneys' fees, any relief obtained through this litigation would be duplicative of the AVC. Pursuant to the AVC, Blockbuster has already paid attorneys' fees to the attorney generals.

■ Having determined the Blockbuster Agreement is valid and fully enforceable, the final remaining issue is whether Plaintiff's claims fall within its scope. *See*

1132 (agreement between Illinois and Oklahoma residents related to interstate commerce and therefore was governed by FAA).

**1310**

9 U.S.C. § 4. The FAA makes clear that in conducting this inquiry, courts should construe the document liberally, "resolving all doubts concerning the scope of arbitrable issues in favor of arbitration." *Shankle,* 163 F.3d at 1233 *citing (Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). The party seeking to avoid arbitration bears the burden of proving that the claims are not covered, and only the most forceful evidence of a purpose to exclude a claim from arbitration can prevail. *See AT & T Techs., Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

A review of the plain terms of the Blockbuster Membership Agreement demonstrates that it is extremely broad, applying to "any dispute ... regarding fees, any transaction with Blockbuster Inc., or any Blockbuster policies." The Agreement contains no limitation on the types of claims, or causes of action, to which the Agreement applies: all contract, tort, and statutory claims fall within its broad coverage. *See Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 39 F.3d 1482, 1487–88 (10th Cir.1994). Plaintiff's class claims clearly amount to a dispute about Blockbuster "fees," "transactions," and "policies." (Complaint at paragraphs 6B–H, 7, 11, 14).

Accordingly, the court finds Defendant's Motion to Compel Individual Arbitration is granted.