**Dalia GENGER, Petitioner,**

v.

**Arie GENGER, Respondent.**

**17 Civ. 176 (DAB)**

United States District Court,
S.D. New York.

Signed May 9, 2017

testimony as to his observations of Johnson was credible.

Robert Allen Meister, Pedowitz & Meister, LLP, New York, NY, for Petitioner.

Robert Z. Dobrish, Dobrish Michaels Gross, LLP, New York, NY., for Respondent.

## MEMORANDUM & ORDER

DEBORAH A. BATTS, United States District Judge.

On January 10, 2017, Petitioner Dalia Genger ("Dalia") filed a Petition for Judgment Confirming Final Arbitration Award against Respondent Arie Genger ("Arie"). This case arises from a Final Arbitration Award before the American Arbitration Association, dated December 28, 2016. The Arbitration stems from a dispute related to Dalia and Arie's (together, "the Couple") 2004 Divorce Agreement. For the following reasons, the Court abstains from exercising jurisdiction in this case and DISMISSES it without prejudice.

## I. BACKGROUND

After thirty-seven years of marriage, Dalia and Arie executed a lengthy Divorce Agreement in October 2004. (See Pet. Ex. A (the "Divorce Agreement" or the "Agreement").) The Divorce Agreement provided for distribution of the Couple's assets, including stock in TPR Investment Associates Inc. and other companies. (Id. at 4–5.) Article XIII of the Agreement stated that it would be governed by New York law and that "[a]ny controversy, claim or dispute between the parties directly or indirectly arising out of [the] Agreement shall be finally settled by arbitration" in Manhattan conducted by an arbitrator selected by the American Arbitration Association "in accordance with the Commercial Arbitration Rules and Mediation Procedures." (Id. at Art. XIII ¶¶ 1, 3.)

Since executing the Agreement, Dalia, Arie, and their two adult children have been litigating various financial issues stemming from the Agreement amongst themselves. (Pet. Ex. E at 1, 25 (noting that the Couple's "war of attrition" has "produced more than forty (40) reported judicial decisions, including at least ten (10) appellate decisions, in addition to numerous unpublished decisions and orders").) Article XII of the Agreement provided Dalia with various audit rights concerning the value of marital assets. (Id. at 3; Pet Ex. A at 38–41.) The instant dispute arises from a 2012 audit requested by Dalia, the results of which are disputed by Arie, and Dalia's resulting demands. (Pet Ex. E at 3–4.) The procedural history of the resulting Arbitration is set out in the Section IV of the Final Award, and the final award is summarized in Section VI.E. (Id. at 5–7, 26–28.)

Dalia filed a Petition for Judgment Confirming Final Arbitration Award pursuant to 9 U.S.C. § 9 on January 10, 2017. On March 16, 2017, Arie filed a letter questioning whether this Court was an appropriate forum to confirm the Arbitration Award given ongoing litigation in New York County Supreme Court. (ECF No. 6.) Dalia contested Arie's position in a letter dated March 16, 2017 (ECF No. 7) and subsequently requested that she be allowed to file a dispositive motion for judgment. (ECF No. 9.)

## II. Discussion

### A. Relevant Federal Arbitration Act Law

Congress passed the Federal Arbitration Act, 9 U.S.C. §§ 1–16 (the "Act" or "FAA"), "to overcome courts' refusals to enforce agreements to arbitrate." Allied–Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 270, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); see also Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) ("[T]he purpose behind [the FAA's] passage was to ensure judicial enforcement of

privately made agreements to arbitrate."). Section 2 of the FAA provides that arbitration provisions in contracts "involving commerce" are "valid, irrevocable, and enforceable." 9 U.S.C. § 2.[1] The Supreme Court has held "that the word 'involving' is broad and is indeed the functional equivalent of 'affecting,'" Allied–Bruce, 513 U.S. at 273–74, 115 S.Ct. 834, "signal[ing] an intent to exercise Congress' commerce power to the full." Id. at 277, 115 S.Ct. 834. The Act applies to transactions that "in fact 'involv[e]' interstate commerce, even if the parties did not contemplate an interstate commerce connection." Id. at 281, 115 S.Ct. 834 (alteration in original). In keeping with the broad interpretation of "involving commerce," "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

The Supreme Court has repeatedly written that the FAA "is 'something of an anomaly' in the realm of federal legislation: It 'bestow[s] no federal jurisdiction but rather requir[es] [for access to a federal forum] an independent jurisdictional basis' over the parties' dispute." Vaden v. Discover Bank, 556 U.S. 49, 59, 129 S.Ct. 1262, 173 L.Ed.2d 206 (2009) (alterations in original) (quoting Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 581–82, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008)); see also Doscher v. Sea Port Grp. Sec., LLC, 832 F.3d 372, 388 (2d Cir. 2016) (extending the Supreme Court's analysis of FAA § 4's "look through" jurisdiction in Vaden to § 10). In cases where the Act applies and there is an independent basis for jurisdiction, the Court has written that, based on the language in §§ 3 and 4, "the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, 470 U.S. at 218, 105 S.Ct. 1238.

Section 9, at issue here, also appears to contain mandatory language. It provides:

If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9 (emphasis added).

B. The Domestic Relations Exception

■■■ While federal courts have a "virtually unflagging obligation … to exercise the jurisdiction given them," Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Supreme Court has long recognized the domestic relations exception to this rule. E.g., Barber v. Barber, 62 U.S. (21 How.) 582, 584, 16 L.Ed. 226 (1858). Even where a court might otherwise have jurisdiction based on diversity, the domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees." Ankenbrandt v. Richards, 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992). While this exception is narrow, the

---

1. It also applies to maritime transactions. Id. Although the language "involving commerce" only appears in § 2, federal courts have long held that this limitation applies to the entire Act. E.g., Bernhardt v. Polygraphic Co. of Am., 350 U.S. 198, 201, 76 S.Ct. 273, 100 L.Ed. 199 (1956).

Second Circuit has held that "[a] federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts." Am. Airlines, Inc. v. Block, 905 F.2d 12, 14 (2d Cir. 1990). Although the Second Circuit's decision in American Airlines, 905 F.2d 12 (2d Cir. 1990), was decided before the Supreme Court's ruling in Ankenbrandt v. Richards, 504 U.S. 689, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992), courts in the Second Circuit have reaffirmed that ruling's "on the verge" language. See Ranney v. Bauza, No. 10 CIV. 7519 (RJS), 2011 WL 4056896, at *3 (S.D.N.Y. Aug. 31, 2011) (collecting cases); Allam v. Meyers, No. 09 CIV. 10580 (KMW), 2011 WL 721648, at *5 (S.D.N.Y. Feb. 24, 2011) (collecting cases).[2]

### C. Application

#### 1. The Federal Arbitration Act Does Not Apply.

■ While the FAA does not bestow an independent basis for jurisdiction, Vaden, 556 U.S. at 59, 129 S.Ct. 1262, there is diversity jurisdiction pursuant to 28 U.S.C. § 1332 as Dalia is a New York citizen, Arie is a Florida citizen, and more than $75,000 is in controversy. (Pet. ¶¶ 7–8; Pet. Ex. E at 26–27.)

■ Because there is jurisdiction, the Court addresses whether this cases is covered by the Federal Arbitration Act. Section 9 states that if a party to an arbitration applies to the court to affirm the arbitration award, "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9 (emphasis added). Since Dalia has applied to affirm the arbitration award, given the Act's mandatory language, the Court must exercise jurisdiction if the FAA applies.

In her Petition, Dalia states that the Divorce Agreement's "arbitration provision appears in a contract involving commerce" (Pet. ¶ 11), and the Arbitration was held pursuant to the Commercial Arbitration Rules and Mediation Procedure. (Id. ¶ 1.) The Agreement provides for the distribution of highly valuable assets, including stock in TPR Investment Associates Inc. (Pet. Ex. A at 4–5.) Furthermore, the Arbitration involved Arie's ownership of A.L. Investment Associates, Inc. and its advance to Shikmim Agricultural Farm Ltd., an Israeli company. (Pet. Ex. E at 9.) Thus, on its face, the Divorce Agreement may involve commerce, as set forth in 9 U.S.C. § 2 and interpreted broadly by the Supreme Court in Allied–Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 273–74, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). Further, the Agreement may in fact involve not only interstate, but also international, commerce. See id. at 281, 115 S.Ct. 834.

The Court, however, can find no factually similar case, where parties have attempted to bring a dispute arising from a divorce settlement to federal court following arbitration. Rather, the cases questioning whether a given contract or transaction involved commerce are patently commercial. See Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 57–58, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003) (debt restructuring agreement between Alabama lender and Alabama company involved commerce); Greystone Nev., LLC v. Anthem Highlands Cmty. Ass'n, 549 Fed.Appx. 621, 624 (9th Cir. 2013) (real estate purchase con-

---

**2.** Although neither party here has raised whether the domestic relations exception is applicable here, a court may appropriately decide sua sponte to abstain from exercising jurisdiction. Bellotti v. Baird, 428 U.S. 132, 143 n.10, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976).

tracts involved commerce where they involved "development by an out-of-state developer, construction by an out-of-state contractor, and the sale of homes assembled with out-of-state materials"); Rota-McLarty v. Santander Consumer USA, Inc., 700 F.3d 690, 697 (4th Cir. 2012) (consumer credit arrangement between consumer in one state and financing company in another state involved commerce); Jenkins v. First Am. Cash Advance of Ga., LLC, 400 F.3d 868, 874–75 (11th Cir. 2005) (payday lending transactions between Georgia consumer and South Dakota bank involved commerce); Comanche Indian Tribe of Okla. v. 49, L.L.C., 391 F.3d 1129, 1132 (10th Cir. 2004) (leases for gaming machines between federally-recognized Indian Tribe located in Oklahoma and Illinois company involved commerce); Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 148 (1st Cir. 1998). ("The FAA clearly covers the [private school] enrollment agreement between the parties in this case—an agreement to pay money for educational services."); Eman–Henshaw v. Park Plaza Hosp., 129 F.3d 610, 1997 WL 681184, at *2 (5th Cir. 1997) (business's activities involved commerce where it "receiv[ed] goods and services from out-of-state vendors, treat[ed] out-of-state patients, and receiv[ed] payment from out-of-state insurance carriers for services rendered"); Chartis Seguros Mex., S.A. de C.V. v. HLI Rail & Rigging, LLC, 967 F.Supp.2d 756, 763 (S.D.N.Y. 2013) (highlighting aggregate effect of insurance policy by New York company for New York clients); Bar–Ayal v. Time Warner Cable Inc., No. 03 CV 9905 (KMW), 2006 WL 2990032, at *2 n.4 (S.D.N.Y. Oct. 16, 2006) (collecting cases and holding that customer agreement for cable-modem service involved commerce in class action case); SDD99, Inc. v. ASA Int'l, Ltd., No. 06 CV 6089 (CJS), 2007 WL 952046, at *4 (W.D.N.Y. Mar. 29, 2007) (agreement between two companies regarding asset ac-

quisition and assumption of liabilities involved commerce). While there may be hundreds of thousands of dollars in dispute in this case, the controversy, on its face, stems from a divorce agreement. (Pet. ¶ 1.) The cited cases involved actual businesses (and in one case a not-for-profit school) exchanging money for goods or services, not a formerly-married couple dividing up once-shared assets. Even if Congress passed the FAA with the intention of encouraging arbitration, the Court cannot imagine that Congress meant to involve federal courts in disagreements stemming from divorce decrees. Cf. Ankenbrandt, 504 U.S. at 700–01, 112 S.Ct. 2206 (construing domestic relations exception as a matter of statutory interpretation based on Congress's long-standing acquiescence to the exclusion of such cases from diversity jurisdiction).

Accordingly, the Court holds that the Divorce Agreement does not involve commerce. As a result, the Federal Arbitration Act and its mandatory language do not apply to this case, and the Court may use its discretion in choosing whether to exercise jurisdiction.

### 2. The Domestic Relations Exception Applies.

Because the Court may exercise its discretion here, it next addresses whether the domestic relations exception applies. The Court is not being asked to issue a divorce decree. See Decree, Black's Law Dictionary (10th ed. 2014). However, the dispute is clearly matrimonial as it relates to property that was shared during Arie and Dalia's marriage. Accordingly, the Court holds that the domestic relations exception applies.

This holding, as well as the determination that the FAA does not apply, is buttressed by the Court's review of domestic relations exception cases involving a divorce agreement. For example, in the lead-

ing Second Circuit case, American Airlines, an ex-wife sought to enforce a state court order regarding wage garnishment pursuant to matrimonial support obligations. In ruling that the district should have abstained from ruling on spousal maintenance, the Court noted that "the federal court has not been requested to determine marital status or to set the amount of support payments, but only to enforce a state decree for support payments." Am. Airlines, 905 F.2d at 14. In this case, as in American Airlines, Dalia is not asking this Court to determine her marital status or set the amount of support payments. And although she is not suing to enforce a state court judgment, she is petitioning to confirm a Final Arbitration Award.

Similarly, in Ranney v. Bauza, No. 10 CIV. 7519 (RJS), 2011 WL 4056896, (S.D.N.Y. Aug. 31, 2011), the plaintiff-wife argued that, because of her ex-husband's fraudulent actions and coercion, their divorce agreement was "one-sided, inequitable, overreaching and shocks the conscience." Id. at *2. In discussing American Airlines, Judge Sullivan noted that "courts have found that claims verged on being matrimonial in nature 'where a plaintiff sought relief related to the alleged violation of a state court order distributing marital property.'" Id. at *3 (quoting Allam, 2011 WL 721648, at *5). In applying domestic relations exception case law, he held that granting the relief sought by the plaintiff-wife—voiding the agreement—would require him "to rule on the proper distribution of assets, an action clearly matrimonial in nature." Id. Here, too, confirming the arbitration award would require a ruling on the proper distribution of assets.

Lastly, in Weiss v. Weiss, 375 F.Supp.2d 10 (D. Conn. 2005), the parties entered into a marital dissolution agreement which divided up both their martial assets and the assets of their shared law practice. Id. at 13. With respect to the division of law firm assets, the Court wrote, "The arrangements concerning the firm are part of a Marital Dissolution Agreement, not a separate contract.... Their agreement concerning the contingent fees was inextricably tied to the remainder of the property settlement ...." Id. at 16. The Court thus held, "[F]ederal courts may not exercise jurisdiction over contract claims between former spouses arising out of separation agreements." Id. at 15. In this case, as in Weiss, though the parties may have parted ways, the provisions of their Agreement relating to commercial issues cannot be divorced from the other provisions of the Agreement, including those which determine the status of their relationship and distribute their other shared assets. Thus, here, as in American Airlines, Ranney, and Weiss, the domestic relations exception applies.

The Second Circuit in American Airlines held that courts should abstain in domestic relations cases "so long as there is no obstacle to their full and fair determination in state courts." Am. Airlines, 905 F.2d at 14. The parties in this case will not be without recourse. Arie indicates, by ECF letter, that the parties "previously agreed to stipulate to a confirmation award from the New York Supreme Court." (ECF No. 6.) Accordingly, the Court, in its discretion, declines to exercise jurisdiction.

## III. CONCLUSION

For the foregoing reasons, the Court abstains from exercising jurisdiction based on the domestic relations exception. The case is thus DISMISSED without prejudice.

SO ORDERED.