(Slip Opinion)     OCTOBER TERM, 2008     1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## VADEN *v.* DISCOVER BANK ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 07–773.   Argued October 6, 2008—Decided March 9, 2009

Section 4 of the Federal Arbitration Act (FAA or Act), 9 U. S. C. §4, authorizes a United States district court to entertain a petition to compel arbitration if the court would have jurisdiction, "save for [the arbitration] agreement," over "a suit arising out of the controversy between the parties."

   Discover Bank's servicing affiliate filed a complaint in Maryland state court to recover past-due charges from one of its credit cardholders, petitioner Vaden.  Discover's pleading presented a claim arising solely under state law.  Vaden answered and counterclaimed, alleging that Discover's finance charges, interest, and late fees violated state law.  Invoking an arbitration clause in its cardholder agreement with Vaden, Discover then filed a §4 petition in Federal District Court to compel arbitration of Vaden's counterclaims.  The District Court ordered arbitration.

   On Vaden's initial appeal, the Fourth Circuit remanded the case for the District Court to determine whether it had subject-matter jurisdiction over Discover's §4 petition pursuant to 28 U. S. C. §1331, which gives federal courts jurisdiction over cases "arising under" federal law.  The Fourth Circuit instructed the District Court to conduct this inquiry by "looking through" the §4 petition to the substantive controversy between the parties.  With Vaden conceding that her state-law counterclaims were completely preempted by §27 of the Federal Deposit Insurance Act (FDIA), the District Court expressly held that it had federal-question jurisdiction and again ordered arbitration.  The Fourth Circuit then affirmed.  The Court of Appeals recognized that, in *Holmes Group, Inc.* v. *Vornado Air Circulation Systems, Inc.*, 535 U. S. 826, this Court held that federal-question jurisdiction depends on the contents of a well-pleaded complaint, and

may not be predicated on counterclaims. It concluded, however, that the complete preemption doctrine is paramount and thus overrides the well-pleaded complaint rule.

*Held:* A federal court may "look through" a §4 petition to determine whether it is predicated on a controversy that "arises under" federal law; in keeping with the well-pleaded complaint rule as amplified in *Holmes Group*, however, a federal court may not entertain a §4 petition based on the contents of a counterclaim when the whole controversy between the parties does not qualify for federal-court adjudication. Pp. 6–21.

   (a) Congress enacted the FAA "[t]o overcome judicial resistance to arbitration," *Buckeye Check Cashing, Inc.* v. *Cardegna*, 546 U. S. 440, 443, and to declare " 'a national policy favoring arbitration' of claims that parties contract to settle in that manner," *Preston* v. *Ferrer*, 552 U. S. ___, ___. To that end, §2 makes arbitration agreements in contracts "involving commerce" "valid, irrevocable, and enforceable," while §4 provides for federal district court enforcement of those agreements. The "body of federal substantive law" generated by elaboration of §2 is equally binding on state and federal courts. *Southland Corp.* v. *Keating*, 465 U. S. 1, 12. However, the FAA "requir[es] [for access to a federal forum] an independent jurisdictional basis" over the parties' dispute. *Hall Street Associates, L. L. C.* v. *Mattel, Inc.*, 552 U. S. ___, ___. Under the well-pleaded complaint rule, a suit "arises under" federal law for 28 U. S. C. §1331 purposes "only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law]." *Louisville & Nashville R. Co.* v. *Mottley*, 211 U. S. 149, 152. Federal jurisdiction cannot be predicated on an actual or anticipated defense, *ibid.,* or rest upon an actual or anticipated counterclaim, *Holmes Group*, 535 U. S. 826. A *complaint* purporting to rest on state law can be recharacterized as one "arising under" federal law if the law governing the complaint is exclusively federal, see *Beneficial Nat. Bank* v. *Anderson*, 539 U. S. 1, 8, but a state-law-based *counterclaim*, even if similarly susceptible to recharacterization, remains nonremovable. Pp. 6–11.

   (b) FAA §4's text drives the conclusion that a federal court should determine its jurisdiction by "looking through" a §4 petition to the parties' underlying substantive controversy. The phrase "save for [the arbitration] agreement" indicates that the district court should assume the absence of the agreement and determine whether it "would have jurisdiction under title 28" over "the controversy between the parties," which is most straightforwardly read to mean the "underlying dispute" between the parties. See *Moses H. Cone Memorial Hospital* v. *Mercury Constr. Corp.*, 460 U. S. 1, 25, n. 32. Vaden's argument that the relevant "controversy" is simply and only the par-

ties' discrete dispute over the arbitrability of their claims is difficult to square with §4's language. If courts are to determine whether they would have jurisdiction "save for [the arbitration] agreement," how can a dispute over an arbitration agreement's existence or applicability be the controversy that counts? The Court is unpersuaded that the "save for" clause means only that the "antiquated and arcane" ouster notion no longer holds sway. To the extent that the ancient "ouster" doctrine continued to impede specific enforcement of arbitration agreements, FAA §2, the Act's "centerpiece provision," *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U. S. 614, 625, directly attended to the problem by commanding that an arbitration agreement is enforceable just as any other contract. Vaden's approach also has curious practical consequences. It would permit a federal court to entertain a §4 petition only when a federal-question suit is already before the court, when the parties satisfy the requirements for diversity-of-citizenship jurisdiction, or when the dispute over arbitrability involves a maritime contract, yet would not accommodate a §4 petitioner who *could* file a federal-question suit in, or remove such a suit to, federal court, but has not done so. In contrast, the "look through" approach permits a §4 petitioner to ask a federal court to compel arbitration without first taking the formal step of initiating or removing a federal-question suit. Pp. 11–15.

   (c) Having determined that a district court should look through a §4 petition, this Court considers whether the court "would have [federal-question] jurisdiction" over "a suit arising out of the controversy" between Discover and Vaden. Because §4 does not enlarge federal-court jurisdiction, a party seeking to compel arbitration may gain such a court's assistance only if, "save for" the agreement, the entire, actual "controversy between the parties," as they have framed it, could be litigated in federal court. Here, the actual controversy is not amenable to federal-court adjudication. The "controversy between the parties" arose from Vaden's "alleged debt," a claim that plainly did not "arise under" federal law; nor did it qualify under any other head of federal-court jurisdiction. The Fourth Circuit misapprehended *Holmes Group* when it concluded that jurisdiction was proper because Vaden's state-law counterclaims were completely preempted. Under the well-pleaded complaint rule, a completely preempted counterclaim remains a counterclaim, and thus does not provide a key capable of opening a federal court's door. Vaden's responsive counterclaims challenging the legality of Discover's charges are merely an aspect of the whole controversy Discover and Vaden brought to state court. Whether one might hypothesize a federal-question suit involving that subsidiary disagreement is beside the point. The relevant question is whether the whole controversy is one over which the fed-

eral courts would have jurisdiction. Section 4 does not give parties license to recharacterize an existing controversy, or manufacture a new controversy, in order to obtain a federal court's aid in compelling arbitration. It is hardly fortuitous that the controversy in this case took the shape it did. Seeking to collect a debt, Discover filed an entirely state-law-grounded complaint in state court, and Vaden chose to file responsive counterclaims. Section 4 does not invite federal courts to dream up counterfactuals when actual litigation has defined the parties' controversy. Allowing parties to commandeer a federal court to slice off responsive pleadings for discrete arbitration while leaving the remainder of the parties' controversy pending in state court makes scant sense. Furthermore, the presence of a threshold question whether a counterclaim alleged to be based on state law is totally preempted by federal law may complicate the §4 inquiry. Although FAA §4 does not empower a federal court to order arbitration here, Discover is not left without recourse. Because the FAA obliges both state and federal courts to honor and enforce arbitration agreements, Discover may petition Maryland's courts for appropriate aid in enforcing the arbitration clause of its contracts with Maryland credit cardholders. Pp. 15–20.

489 F. 3d 594, reversed and remanded.

GINSBURG, J., delivered the opinion of the Court, in which SCALIA, KENNEDY, SOUTER, and THOMAS, JJ., joined. ROBERTS, C. J., filed an opinion concurring in part and dissenting in part, in which STEVENS, BREYER, and ALITO, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 07–773

BETTY E. VADEN, PETITIONER *v.* DISCOVER
BANK ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FOURTH CIRCUIT

[March 9, 2009]

JUSTICE GINSBURG delivered the opinion of the Court.

Section 4 of the Federal Arbitration Act, 9 U. S. C. §4, authorizes a United States district court to entertain a petition to compel arbitration if the court would have jurisdiction, "save for [the arbitration] agreement," over "a suit arising out of the controversy between the parties." We consider in this opinion two questions concerning a district court's subject-matter jurisdiction over a §4 petition: Should a district court, if asked to compel arbitration pursuant to §4, "look through" the petition and grant the requested relief if the court would have federal-question jurisdiction over the underlying controversy? And if the answer to that question is yes, may a district court exercise jurisdiction over a §4 petition when the petitioner's complaint rests on state law but an actual or potential counterclaim rests on federal law?

The litigation giving rise to these questions began when Discover Bank's servicing affiliate filed a complaint in Maryland state court. Presenting a claim arising solely under state law, Discover sought to recover past-due charges from one of its credit cardholders, Betty Vaden.

Vaden answered and counterclaimed, alleging that Discover's finance charges, interest, and late fees violated state law. Invoking an arbitration clause in its cardholder agreement with Vaden, Discover then filed a §4 petition in the United States District Court for the District of Maryland to compel arbitration of Vaden's counterclaims. The District Court had subject-matter jurisdiction over its petition, Discover maintained, because Vaden's state-law counterclaims were completely preempted by federal banking law. The District Court agreed and ordered arbitration. Reasoning that a federal court has jurisdiction over a §4 petition if the parties' underlying dispute presents a federal question, the Fourth Circuit eventually affirmed.

We agree with the Fourth Circuit in part. A federal court may "look through" a §4 petition and order arbitration if, "save for [the arbitration] agreement," the court would have jurisdiction over "the [substantive] controversy between the parties." We hold, however, that the Court of Appeals misidentified the dimensions of "the controversy between the parties." Focusing on only a slice of the parties' entire controversy, the court seized on Vaden's counterclaims, held them completely preempted, and on that basis affirmed the District Court's order compelling arbitration. Lost from sight was the triggering plea—Discover's claim for the balance due on Vaden's account. Given that entirely state-based plea and the established rule that federal-court jurisdiction cannot be invoked on the basis of a defense or counterclaim, the whole "controversy between the parties" does not qualify for federal-court adjudication. Accordingly, we reverse the Court of Appeals' judgment.

## I

This case originated as a garden-variety, state-law-based contract action: Discover sued its cardholder,

Vaden, in a Maryland state court to recover arrearages amounting to $10,610.74, plus interest and counsel fees.[1] Vaden's answer asserted usury as an affirmative defense. Vaden also filed several counterclaims, styled as class actions. Like Discover's complaint, Vaden's pleadings invoked only state law: Vaden asserted that Discover's demands for finance charges, interest, and late fees violated Maryland's credit laws. See Md. Com. Law Code Ann. §§12–506, 12–506.2 (Lexis 2005). Neither party invoked—by notice to the other or petition to the state court—the clause in the credit card agreement providing for arbitration of "any claim or dispute between [Discover and Vaden]," App. 44 (capitalization and bold typeface omitted).[2]

Faced with Vaden's counterclaims, Discover sought federal-court aid. It petitioned the United States District Court for the District of Maryland for an order, pursuant to §4 of the Federal Arbitration Act (FAA or Act), 9 U. S. C. §4, compelling arbitration of Vaden's counterclaims.[3] Although those counterclaims were framed under state law, Discover urged that they were governed entirely by federal law, specifically, §27(a) of the Federal Deposit

—————

[1] Discover apparently had no access to a federal forum for its suit against Vaden on the basis of diversity-of-citizenship jurisdiction. Under that head of federal-court jurisdiction, the amount in controversy must "excee[d] . . . $75,000." 28 U. S. C. §1332(a).

[2] Vaden's preference for court adjudication is unsurprising. The arbitration clause, framed by Discover, prohibited presentation of "any claims as a representative or member of a class." App. 45 (capitalization omitted).

[3] Section 4 reads, in relevant part:

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U. S. C. §4.

Insurance Act (FDIA), 12 U. S. C. §1831d(a). Section 27(a) prescribes the interest rates state-chartered, federally insured banks like Discover can charge, "notwithstanding any State constitution or statute which is hereby preempted." This provision, Discover maintained, was completely preemptive, *i.e.*, it superseded otherwise applicable Maryland law, and placed Vaden's counterclaims under the exclusive governance of the FDIA. On that basis, Discover asserted, the District Court had authority to entertain the §4 petition pursuant to 28 U. S. C. §1331, which gives federal courts jurisdiction over cases "arising under" federal law.

The District Court granted Discover's petition, ordered arbitration, and stayed Vaden's prosecution of her counterclaims in state court pending the outcome of arbitration. App. to Pet. for Cert. 89a–90a. On Vaden's initial appeal, the Fourth Circuit inquired whether the District Court had federal-question jurisdiction over Discover's §4 petition. To make that determination, the Court of Appeals instructed, the District Court should "look through" the §4 petition to the substantive controversy between the parties. 396 F. 3d 366, 369, 373 (2005). The appellate court then remanded the case for an express determination whether that controversy presented "a properly invoked federal question." *Id.,* at 373.

On remand, Vaden "concede[d] that the FDIA completely preempts any state claims against a federally insured bank." 409 F. Supp. 2d 632, 636 (Md. 2006). Accepting this concession, the District Court expressly held that it had federal-question jurisdiction over Discover's §4 petition and again ordered arbitration. *Id.*, at 634–636, 639. In this second round, the Fourth Circuit affirmed, dividing 2 to 1. 489 F. 3d 594 (2007).

Recognizing that "a party may not create jurisdiction by concession," *id.*, at 604, n. 10, the Fourth Circuit majority conducted its own analysis of FDIA §27(a), ultimately

concluding that the provision completely preempted state law and therefore governed Vaden's counterclaims.[4]  This Court's decision in *Holmes Group, Inc.* v. *Vornado Air Circulation Systems, Inc.*, 535 U. S. 826 (2002), the majority recognized, held that federal-question jurisdiction depends on the contents of a well-pleaded complaint, and may not be predicated on counterclaims.  489 F. 3d, at 600, n. 4.  Nevertheless, the majority concluded, the complete preemption doctrine is paramount, "overrid[ing] such fundamental cornerstones of federal subject-matter jurisdiction as the well-pleaded complaint rule."  *Ibid.* (quoting 14B C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure §3722.1, p. 511 (3d ed. 1998) (hereinafter Wright & Miller)).[5]

The dissenting judge considered *Holmes Group* dispositive.  As §27(a) of the FDIA formed no part of Discover's complaint, but came into the case only as a result of Vaden's responsive pleadings, the dissent reasoned, "[t]here was no 'properly invoked federal question' in the underlying state case."  489 F. 3d, at 610.

We granted certiorari, 552 U. S. \_\_\_ (2008), in view of the conflict among lower federal courts on whether district courts, petitioned to order arbitration pursuant to §4 of the FAA, may "look through" the petition and examine the parties' underlying dispute to determine whether federal-question jurisdiction exists over the §4 petition.  Compare *Wisconsin* v. *Ho-Chunk Nation*, 463 F. 3d 655, 659 (CA7

———————

[4] Our disposition of this case makes it unnecessary to take up the question of §27(a)'s preemptive force generally or in the particular context of Discover's finance charges.  We therefore express no opinion on those issues.  Cf. *Beneficial Nat. Bank* v. *Anderson*, 539 U. S. 1, 9–10 (2003) (holding that the National Bank Act, 12 U. S. C. §§85, 86, completely preempts state-law usury claims against national banks).

[5] But see 489 F. 3d 594, 612 (CA4 2007) (dissenting opinion) (observing that the passage from Wright & Miller referenced by the majority "makes clear that the doctrine of complete preemption is exclusively focused on claims in a *plaintiff's complaint*").

2006) (in determining jurisdiction over a §4 petition, the court may not "look through" the petition and focus on the underlying dispute); *Smith Barney, Inc.* v. *Sarver*, 108 F. 3d 92, 94 (CA6 1997) (same); *Westmoreland Capital Corp.* v. *Findlay*, 100 F. 3d 263, 267–269 (CA2 1996) (same); and *Prudential-Bache Securities, Inc.* v. *Fitch*, 966 F. 2d 981, 986–989 (CA5 1992) (same), with *Community State Bank* v. *Strong*, 485 F. 3d 597, 605–606 (court may "look through" the petition and train on the underlying dispute), vacated, reh'g en banc granted, 508 F. 3d 576 (CA11 2007);[6] and 396 F. 3d, at 369–370 (case below) (same).

As this case shows, if the underlying dispute is the proper focus of a §4 petition, a further question may arise. The dispute brought to state court by Discover concerned Vaden's failure to pay over $10,000 in past-due credit card charges. In support of that complaint, Discover invoked no federal law. When Vaden answered and counter-claimed, however, Discover asserted that federal law, specifically §27(a) of the FDIA, displaced the state laws on which Vaden relied. What counts as the underlying dispute in a case so postured? May Discover invoke §4, not on the basis of its own complaint, which had no federal element, but on the basis of counterclaims asserted by Vaden? To answer these questions, we first review relevant provisions of the FAA, 9 U. S. C. §1 *et seq.*, and controlling tenets of federal jurisdiction.

## II

In 1925, Congress enacted the FAA "[t]o overcome judi-

─────────

[6] In *Community State Bank* v. *Strong*, 485 F. 3d 597, 605–606 (CA11 2007), the Court of Appeals approved the "look through" approach as advanced in circuit precedent. But Judge Marcus, who authored the court's unanimous opinion, wrote a special concurrence, noting that, were he writing on a clean slate, he would reject the "look through" approach.

cial resistance to arbitration," *Buckeye Check Cashing, Inc.* v. *Cardegna*, 546 U. S. 440, 443 (2006), and to declare "'a national policy favoring arbitration' of claims that parties contract to settle in that manner," *Preston* v. *Ferrer*, 552 U. S. ___, ___ (2008) (slip op., at 5) (quoting *Southland Corp.* v. *Keating*, 465 U. S. 1, 10 (1984)). To that end, §2 provides that arbitration agreements in contracts "involving commerce" are "valid, irrevocable, and enforceable." 9 U. S. C. §2.[7] Section 4—the section at issue here—provides for United States district court enforcement of arbitration agreements. Petitions to compel arbitration, §4 states, may be brought before "any United States district court which, save for such agreement, would have jurisdiction under title 28 . . . of the subject matter of a suit arising out of the controversy between the parties." See *supra,* at 3, n. 3.[8]

The "body of federal substantive law" generated by elaboration of FAA §2 is equally binding on state and

———————

[7] Section 2 reads, in full:

"A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U. S. C. §2.

[8] A companion provision, §3, provides for stays of litigation pending arbitration. It reads:

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U. S. C. §3.

federal courts. *Southland*, 465 U. S., at 12 (quoting *Moses H. Cone Memorial Hospital* v. *Mercury Constr. Corp.*, 460 U. S. 1, 25, n. 32 (1983)); accord *Allied-Bruce Terminix Cos.* v. *Dobson*, 513 U. S. 265, 271–272 (1995). "As for jurisdiction over controversies touching arbitration," however, the Act is "something of an anomaly" in the realm of federal legislation: It "bestow[s] no federal jurisdiction but rather requir[es] [for access to a federal forum] an independent jurisdictional basis" over the parties' dispute. *Hall Street Associates, L. L. C.* v. *Mattel, Inc.*, 552 U. S. ___, ___ (2008) (slip op., at 4) (quoting *Moses H. Cone*, 460 U. S., at 25, n. 32).[9]  Given the substantive supremacy of the FAA, but the Act's nonjurisdictional cast, state courts have a prominent role to play as enforcers of agreements to arbitrate.  See *Southland*, 465 U. S., at 15; *Moses H. Cone*, 460 U. S., at 25, and n. 32.

The independent jurisdictional basis Discover relies upon in this case is 28 U. S. C. §1331, which vests in federal district courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  Under the longstanding well-pleaded complaint rule, however, a suit "arises under" federal law

_____

[9] Chapter 2 of the FAA, not implicated here, does expressly grant federal courts jurisdiction to hear actions seeking to enforce an agreement or award falling under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards.  See 9 U. S. C. §203 ("An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States.  The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding . . . .").  FAA §205 goes further and overrides the well-pleaded complaint rule *pro tanto*.  9 U. S. C. §205 ("The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal.").  As Vaden points out, these sections demonstrate that "when Congress wants to expand [federal-court] jurisdiction, it knows how to do so clearly and unequivocally."  Brief for Petitioner 38.

"only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law]." *Louisville & Nashville R. Co.* v. *Mottley*, 211 U. S. 149, 152 (1908). Federal jurisdiction cannot be predicated on an actual or anticipated defense: "It is not enough that the plaintiff alleges some anticipated defense to his cause of action and asserts that the defense is invalidated by some provision of [federal law]." *Ibid.*

Nor can federal jurisdiction rest upon an actual or anticipated counterclaim. We so ruled, emphatically, in *Holmes Group*, 535 U. S. 826. Without dissent, the Court held in *Holmes Group* that a federal counterclaim, even when compulsory, does not establish "arising under" jurisdiction.[10] Adhering assiduously to the well-pleaded complaint rule, the Court observed, *inter alia*, that it would undermine the clarity and simplicity of that rule if federal courts were obliged to consider the contents not only of the complaint but also of responsive pleadings in determining whether a case "arises under" federal law. *Id.,* at 832. See

———————

[10] *Holmes Group, Inc.* v. *Vornado Air Circulation Systems, Inc.*, 535 U. S. 826 (2002), involved 28 U. S. C. §1295(a)(1), which vests in the Federal Circuit exclusive jurisdiction over "an appeal from a final decision of a district court . . . if the jurisdiction of that court was based, in whole or in part, on [28 U. S. C. §]1338." Section 1338(a), in turn, confers on district courts "[exclusive] original jurisdiction of any civil action arising under any Act of Congress relating to patents." The plaintiff's complaint in *Holmes Group* presented a federal claim, but not one relating to patents; the defendant counterclaimed for patent infringement. The Court ruled that the case did not "aris[e] under" the patent laws by virtue of the patent counterclaim, and therefore held that the Federal Circuit lacked appellate jurisdiction under §1295(a)(1). See 535 U. S., at 830–832.

In reaching its decision in *Holmes Group*, the Court first attributed to the words "arising under" in §1338(a) the same meaning those words have in §1331. See *id.,* at 829–830. It then reasoned that a counterclaim asserted in a responsive pleading cannot provide the basis for "arising under" jurisdiction consistently with the well-pleaded complaint rule. See *id.,* at 830–832.

also *id.*, at 830 ("[T]he well-pleaded complaint rule, properly understood, [does not] allo[w] a counterclaim to serve as the basis for a district court's 'arising under' jurisdiction."); *Franchise Tax Bd. of Cal.* v. *Construction Laborers Vacation Trust for Southern Cal.*, 463 U. S. 1, 10–11, and n. 9 (1983) ("The well-pleaded complaint rule applies to the original jurisdiction of the district courts as well as to their removal jurisdiction.").[11]

  A *complaint* purporting to rest on state law, we have recognized, can be recharacterized as one "arising under" federal law if the law governing the complaint is exclusively federal. See *Beneficial Nat. Bank* v. *Anderson*, 539 U. S. 1, 8 (2003). Under this so-called "complete preemption doctrine," a plaintiff's "state cause of action [may be recast] as a federal claim for relief, making [its] removal [by the defendant] proper on the basis of federal question jurisdiction." 14B Wright & Miller §3722.1, p. 511.[12]  A state-law-based *counterclaim*, however, even if similarly susceptible to recharacterization, would remain nonre-

———————

  [11] The Court noted in *Franchise Tax Bd. of Cal.* v. *Construction Laborers Vacation Trust for Southern Cal.*, 463 U. S. 1, 10–11, n. 9 (1983), and in *Holmes Group*, 535 U. S., at 831, that commentators have repeatedly suggested Judicial Code revisions under which responsive pleadings that may be dispositive would count in determining whether a case "arises under" federal law. See American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts §1312, pp. 188–194 (1969) (discussed in 14B C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure §3722, pp. 505–507 (3d ed. 1998) (hereinafter Wright & Miller)); cf. Wechsler, Federal Jurisdiction and the Revision of the Judicial Code, 13 Law & Contemp. Prob. 216, 233–234 (1948). Congress, however, has not responded to these suggestions.

  [12] Recharacterization of an asserted state-law claim as in fact a claim arising exclusively under federal law, and therefore removable on the defendant's petition, of course does not mean that the claim cannot remain in state court. There is nothing inappropriate or exceptional, Discover acknowledges, about a state court's entertaining, and applying federal law to, completely preempted claims or counterclaims. See Tr. of Oral Arg. 35.

movable. Under our precedent construing §1331, as just explained, counterclaims, even if they rely exclusively on federal substantive law, do not qualify a case for federal-court cognizance.

## III

Attending to the language of the FAA and the above-described jurisdictional tenets, we approve the "look through" approach to this extent: A federal court may "look through" a §4 petition to determine whether it is predicated on an action that "arises under" federal law; in keeping with the well-pleaded complaint rule as amplified in *Holmes Group*, however, a federal court may not entertain a §4 petition based on the contents, actual or hypothetical, of a counterclaim.

## A

The text of §4 drives our conclusion that a federal court should determine its jurisdiction by "looking through" a §4 petition to the parties' underlying substantive controversy. We reiterate §4's relevant instruction: When one party seeks arbitration pursuant to a written agreement and the other resists, the proponent of arbitration may petition for an order compelling arbitration in

> "any United States district court which, save for [the arbitration] agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties." 9 U. S. C. §4.

The phrase "save for [the arbitration] agreement" indicates that the district court should assume the absence of the arbitration agreement and determine whether it "would have jurisdiction under title 28" without it. See 396 F. 3d, at 369, 372 (case below). Jurisdiction over what? The text of §4 refers us to "the controversy between the parties." That phrase, the Fourth Circuit said, and we

agree, is most straightforwardly read to mean the "substantive conflict between the parties." *Id.,* at 370. See also *Moses H. Cone*, 460 U. S., at 25, n. 32 (noting in dicta that, to entertain a §4 petition, a federal court must have jurisdiction over the "underlying dispute").[13]

The majority of Courts of Appeals to address the question, we acknowledge, have rejected the "look through" approach entirely, as Vaden asks us to do here. See *supra*, at 5–6. The relevant "controversy between the parties," Vaden insists, is simply and only the parties' discrete dispute over the arbitrability of their claims. She relies, quite reasonably, on the fact that a §4 petition to compel arbitration seeks no adjudication on the merits of the underlying controversy. Indeed, its very purpose is to have an arbitrator, rather than a court, resolve the merits. A §4 petition, Vaden observes, is essentially a plea for specific performance of an agreement to arbitrate, and it thus presents principally contractual questions: Did the parties validly agree to arbitrate? What issues does their agreement encompass? Has one party dishonored the agreement?

Vaden's argument, though reasonable, is difficult to square with the statutory language. Section 4 directs courts to determine whether they would have jurisdiction "save for [the arbitration] agreement." How, then, can a dispute over the existence or applicability of an arbitration agreement be the controversy that counts?

--------

[13] The parties' underlying dispute may or may not be the subject of pending litigation. This explains §4's use of the conditional "would" and the indefinite "*a* suit." A party often files a §4 petition to compel arbitration precisely because it does not want to bring suit and litigate in court. Sometimes, however, a §4 petition is filed after litigation has commenced. The party seeking to compel arbitration in such cases is typically the defendant, who claims to be aggrieved by the plaintiff's attempt to litigate rather than arbitrate. This case involves the relatively unusual situation in which the party that initiated litigation of the underlying dispute is also the party seeking to compel arbitration.

The "save for" clause, courts espousing the view embraced by Vaden respond, means only that the "antiquated and arcane" ouster notion no longer holds sway. *Drexel Burnham Lambert, Inc.* v. *Valenzuela Bock*, 696 F. Supp. 957, 961 (SDNY 1988). Adherents to this "ouster" explanation of §4's language recall that courts traditionally viewed arbitration clauses as unworthy attempts to "oust" them of jurisdiction; accordingly, to guard against encroachment on their domain, they refused to order specific enforcement of agreements to arbitrate. See H. R. Rep. No. 96, 68th Cong., 1st Sess., 1–2 (1924) (discussed in *Dean Witter Reynolds Inc.* v. *Byrd*, 470 U. S. 213, 219–220, and n. 6 (1985)). The "save for" clause, as comprehended by proponents of the "ouster" explanation, was designed to ensure that courts would no longer consider themselves ousted of jurisdiction and would therefore specifically enforce arbitration agreements. See, *e.g.*, *Westmoreland*, 100 F. 3d, at 267–268, and n. 6 (adopting the "ouster" interpretation advanced in *Drexel Burnham Lambert,* 696 F. Supp., at 961–963); *Strong*, 485 F. 3d, at 631 (Marcus, J., specially concurring) (reading §4's "save for" clause "as instructing the court to 'set aside' not the arbitration agreement . . . , but merely the previous judicial hostility to arbitration agreements").

We are not persuaded that the "ouster" explanation of §4's "save for" clause carries the day. To the extent that the ancient "ouster" doctrine continued to impede specific enforcement of arbitration agreements, §2 of the FAA, the Act's "centerpiece provision," *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U. S. 614, 625 (1985), directly attended to the problem. Covered agreements to arbitrate, §2 declares, are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Having commanded that an arbitration agreement is enforceable just as any other contract, Congress had no cause to repeat the point.

See 1 I. MacNeil, R. Speidel, & T. Stipanowich, Federal Arbitration Law §9.2.3.3, p. 9:18 (1995) (hereinafter MacNeil) ("Th[e] effort to connect the 'save for' language to the ancient problem of 'ouster of jurisdiction' is imaginative, but utterly unfounded and historically inaccurate." (footnote omitted)).[14]

In addition to its textual implausibility, the approach Vaden advocates has curious practical consequences. It would permit a federal court to entertain a §4 petition only when a federal-question suit is already before the court, when the parties satisfy the requirements for diversity-of-citizenship jurisdiction, or when the dispute over arbitrability involves a maritime contract. See, *e.g.*, *Westmoreland*, 100 F. 3d, at 268–269; 1 MacNeil §9.2.3.1, pp. 9:12–9:13 (when a federal-question suit has been filed in or removed to federal court, the court "may order arbitration under FAA §4").[15] Vaden's approach would not accommodate a §4 petitioner who *could* file a federal-question suit in (or remove such a suit to) federal court, but who has not done so. In contrast, when the parties' underlying dispute arises under federal law, the "look through" approach permits a §4 petitioner to ask a federal court to compel arbitration without first taking the formal step of initiating or removing a federal-question suit—that is, without seeking federal adjudication of the very questions it wants to arbitrate rather than litigate. See 1 *id.*, §9.2.3.3, p. 9:21

---

[14] Because "the ouster problem was just as great under state law as it was under federal," the absence of "save for" language in contemporaneous state arbitration acts bolsters our conclusion that §4 was not devised to dislodge the common-law ouster doctrine. 1 I. MacNeil, R. Speidel, & T. Stipanowich, Federal Arbitration Law §9.2.3.3, p. 9:18 (1995). See also 396 F. 3d 366, 369–370, n. 2 (CA4 2005) (case below).

[15] Specific jurisdiction-granting provisions may also authorize a federal court to entertain a petition to compel arbitration. See, *e.g.*, 9 U. S. C. §§203, 205 (providing for federal-court jurisdiction over arbitration agreements covered by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards).

(explaining that the approach Vaden advocates "creates a totally artificial distinction" based on whether a dispute is subject to pending federal litigation).

## B

Having determined that a district court should "look through" a §4 petition, we now consider whether the court "would have [federal-question] jurisdiction" over "a suit arising out of the controversy" between Discover and Vaden. 9 U. S. C. §4. As explained above, §4 of the FAA does not enlarge federal-court jurisdiction; rather, it confines federal courts to the jurisdiction they would have "save for [the arbitration] agreement." See *supra*, at 7–8. Mindful of that limitation, we read §4 to convey that a party seeking to compel arbitration may gain a federal court's assistance only if, "save for" the agreement, the entire, actual "controversy between the parties," as they have framed it, could be litigated in federal court. We conclude that the parties' actual controversy, here precipitated by Discover's state-court suit for the balance due on Vaden's account, is not amenable to federal-court adjudication. Consequently, the §4 petition Discover filed in the United States District Court for the District of Maryland must be dismissed.

As the Fourth Circuit initially stated, the "controversy between the parties" arose from the "alleged debt" Vaden owed to Discover. 396 F. 3d, at 370. Discover's complaint in Maryland state court plainly did not "arise under" federal law, nor did it qualify under any other head of federal-court jurisdiction. See *supra*, at 3, and n. 1.

In holding that Discover properly invoked federal-court jurisdiction, the Fourth Circuit looked beyond Discover's complaint and homed in on Vaden's state-law-based defense and counterclaims. Those responsive pleadings, Discover alleged, and the Fourth Circuit determined, were completely preempted by the FDIA. See *supra*, at 3–4.

The Fourth Circuit, however, misapprehended our deci-sion in *Holmes Group*. Under the well-pleaded complaint rule, a completely preempted counterclaim remains a counterclaim and thus does not provide a key capable of opening a federal court's door. See *supra*, at 8–11. See also *Taylor* v. *Anderson*, 234 U. S. 74, 75–76 (1914) ("[W]hether a case is one arising under [federal law] . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim . . . , unaided by anything alleged in anticipation o[r] avoidance of defenses which it is thought the defendant may interpose.").

Neither Discover nor THE CHIEF JUSTICE, concurring in part and dissenting in part (hereinafter dissent), defends the Fourth Circuit's reasoning. Instead, the dissent in-sists that a federal court "would have" jurisdiction over "the controversy Discover seeks to arbitrate"—namely, "whether 'Discover Bank charged illegal finance charges, interest and late fees.'" *Post*, at 1 (quoting App. 30). The dissent hypothesizes two federal suits that might arise from this purported controversy: "an action by Vaden asserting that the charges violate the FDIA, or one by Discover seeking a declaratory judgment that they do not." *Post*, at 2.

There is a fundamental flaw in the dissent's analysis: In lieu of focusing on the whole controversy as framed by the parties, the dissent hypothesizes discrete controversies of its own design. As the parties' state-court filings reflect, the originating controversy here concerns Vaden's alleged debt to Discover. Vaden's responsive counterclaims chal-lenging the legality of Discover's charges are a discrete aspect of the whole controversy Discover and Vaden brought to state court. Whether one might imagine a federal-question suit involving the parties' disagreement over Discover's charges is beside the point. The relevant question is whether the whole controversy between the parties—not just a piece broken off from that contro-

versy—is one over which the federal courts would have jurisdiction.

The dissent would have us treat a §4 petitioner's statement of the issues to be arbitrated as the relevant controversy even when that statement does not convey the full flavor of the parties' entire dispute. Artful dodges by a §4 petitioner should not divert us from recognizing the actual dimensions of that controversy. The text of §4 instructs federal courts to determine whether they would have jurisdiction over "a suit arising out of *the* controversy between the parties"; it does not give §4 petitioners license to recharacterize an existing controversy, or manufacture a new controversy, in an effort to obtain a federal court's aid in compelling arbitration.[16]

Viewed contextually and straightforwardly, it is hardly "fortuit[ous]" that the controversy in this case took the shape it did. Cf. *post*, at 2. Seeking to collect a debt, Discover filed an entirely state-law-grounded complaint in state court, and Vaden chose to file responsive counterclaims. Perhaps events could have unfolded differently,

---

[16] Noting that the FAA sometimes uses "controversy" to refer to the dispute to be arbitrated, the dissent insists that it must have the same meaning in §4. Cf. *post*, at 2–3. But §4 does not ask a district court to determine whether it would have jurisdiction over "the controversy the §4 petitioner seeks to arbitrate"; it asks whether the court would have jurisdiction over "the controversy between the parties." Here, the issue Discover seeks to arbitrate is undeniably only a fraction of the controversy between the parties. We decline to rewrite the statute to ignore this reality.

Moreover, our reading of §4 fully accords with the statute's subjunctive construction ("would have jurisdiction") and its reference to "*a* suit." Cf. *post*, at 5. Section 4, we recognize, enables a party to seek an order compelling arbitration even when the parties' controversy is not the subject of pending litigation. See *supra*, at 12, n. 13, 14–15. Whether or not the controversy between the parties is embodied in an existing suit, the relevant question remains the same: Would a federal court have jurisdiction over an action arising out of that full-bodied controversy?

but §4 does not invite federal courts to dream up counterfactuals when actual litigation has defined the parties' controversy.[17]

As the dissent would have it, parties could commandeer a federal court to slice off responsive pleadings for arbitration while leaving the remainder of the parties' controversy pending in state court. That seems a bizarre way to proceed. In this case, Vaden's counterclaims would be sent to arbitration while the complaint to which they are addressed—Discover's state-law-grounded debt-collection action—would remain pending in a Maryland court. When the controversy between the parties is not one over which a federal court would have jurisdiction, it makes scant sense to allow one of the parties to enlist a federal court to disturb the state-court proceedings by carving out issues for separate resolution.[18]

––––––––––

[17]Our approach, the dissent asserts, would produce "inconsistent results" based "upon the happenstance of how state-court litigation has unfolded." *Post*, at 5, 6. Of course, a party's ability to gain adjudication of a federal question in federal court often depends on how that question happens to have been presented, and the dissent's argument is little more than a veiled criticism of *Holmes Group* and the well-pleaded complaint rule. When a litigant files a state-law claim in state court, and her opponent parries with a federal counterclaim, the action is not removable to federal court, even though it would have been removable had the order of filings been reversed. See *Holmes Group*, 535 U. S., at 831–832.

True, the outcome in this case may well have been different had Vaden initiated an FDIA claim about the legality of Discover's charges. Because that controversy likely would have been amenable to adjudication in a federal forum, Discover could have asked a federal court to send the parties to arbitration. But that is not what occurred here. Vaden did not invoke the FDIA. Indeed, she framed her counterclaims under state law and clearly preferred the Maryland forum. The dissent's hypothesizing about the case that might have been brought does not provide a basis for federal-court jurisdiction.

[18]The dissent observes, *post*, at 4, that our rule might enable a party to request a federal court's aid in compelling arbitration of a state-law counterclaim that might otherwise be adjudicated in state court. But if

Furthermore, the presence of a threshold question whether a counterclaim alleged to be based on state law is totally preempted by federal law may complicate the dissent's §4 inquiry. This case is illustrative. The dissent relates that Vaden eventually conceded that FDIA §27(a), not Maryland law, governs the charges and fees Discover may impose. *Post*, at 1–2. But because the issue is jurisdictional, Vaden's concession is not determinative. See *supra*, at 4–5, and n. 4. The dissent simply glides by the preemption issue, devoting no attention to it, although this Court has not yet resolved the matter.

In sum, §4 of the FAA instructs district courts asked to compel arbitration to inquire whether the court would have jurisdiction, "save for [the arbitration] agreement," over "a suit arising out of the controversy between the parties." We read that prescription in light of the well-pleaded complaint rule and the corollary rule that federal jurisdiction cannot be invoked on the basis of a defense or counterclaim. Parties may not circumvent those rules by asking a federal court to order arbitration of the portion of a controversy that implicates federal law when the court would not have federal-question jurisdiction over the controversy as a whole. It does not suffice to show that a federal question lurks somewhere inside the parties' controversy, or that a defense or counterclaim would arise under federal law. Because the controversy between Discover and Vaden, properly perceived, is not one qualifying for federal-court adjudication, §4 of the FAA does not empower a federal court to order arbitration of that controversy, in whole or in part.[19]

————————

a federal court would have jurisdiction over the parties' whole controversy, we see nothing anomalous about the court's ordering arbitration of a state-law claim constituting part of that controversy. Federal courts routinely exercise supplemental jurisdiction over state-law claims. See 28 U. S. C. §1367.

[19] This Court's declaratory judgment jurisprudence in no way under-

Discover, we note, is not left without recourse.  Under the FAA, state courts as well as federal courts are obliged to honor and enforce agreements to arbitrate.  *Southland*, 465 U. S., at 12; *Moses H. Cone*, 460 U. S., at 25, 26, n. 34.  See also *supra*, at 7–8.  Discover may therefore petition a Maryland court for aid in enforcing the arbitration clause of its contracts with Maryland cardholders.

True, Maryland's high court has held that §§3 and 4 of the FAA prescribe federal-court procedures and, therefore, do not bind the state courts.[20]  But Discover scarcely lacks an available state remedy.  Section 2 of the FAA, which does bind the state courts, renders agreements to arbitrate "valid, irrevocable, and *enforceable*."  This provision "carries with it duties [to credit and enforce arbitration agreements] indistinguishable from those imposed on federal courts by FAA §§3 and 4."  1 MacNeil §10.8.1, p. 10:77.  Notably, Maryland, like many other States, provides a statutory remedy nearly identical to §4.  See Md. Cts. & Jud. Proc. Code Ann. §3–207 (Lexis 2006) ("If a party to an arbitration agreement . . . refuses to arbitrate, the other party may file a petition with a court to order

_____

cuts our analysis.  Cf. *post*, at 2, 7.  Discover, the dissent implies, could have brought suit in federal court seeking a declaration that its charges conform to federal law.  Again, the dissent's position rests on its misconception of "the controversy between the parties."  Like §4 itself, the Declaratory Judgment Act does not enlarge the jurisdiction of the federal courts; it is "procedural only."  *Aetna Life Ins. Co.* v. *Haworth*, 300 U. S. 227, 240 (1937).  Thus, even in a declaratory judgment action, a federal court could not entertain Discover's state-law debt-collection claim.  Cf. 10B Wright & Miller §2758, pp. 519–521 ("The Declaratory Judgment Act was not intended to enable a party to obtain a change of tribunal from a state to federal court, and it is not the function of the federal declaratory action merely to anticipate a defense that otherwise could be presented in a state action." (footnote omitted)).

[20]This Court has not decided whether §§3 and 4 apply to proceedings in state courts, see *Volt Information Sciences, Inc.* v. *Board of Trustees of Leland Stanford Junior Univ.*, 489 U. S. 468, 477, n. 6 (1989), and we do not do so here.

arbitration. . . .  If the court determines that the agreement exists, it shall order arbitration.  Otherwise it shall deny the petition.").  See also *Walther* v. *Sovereign Bank*, 386 Md. 412, 424, 872 A. 2d 735, 742 (2005) ("The Maryland Arbitration Act has been called the 'State analogue . . . to the Federal Arbitration Act.'  The same policy favoring enforcement of arbitration agreements is present in both our own and the federal acts." (internal quotation marks and citation omitted)).  Even before it filed its debt-recovery action in a Maryland state court, Discover could have sought from that court an order compelling arbitration of any agreement-related dispute between itself and cardholder Vaden.  At no time was federal-court intervention needed to place the controversy between the parties before an arbitrator.

*          *          *

For the reasons stated, the District Court lacked jurisdiction to entertain Discover's §4 petition to compel arbitration.  The judgment of the Court of Appeals affirming the District Court's order is therefore reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

No. 07–773

BETTY E. VADEN, PETITIONER *v.* DISCOVER
BANK ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FOURTH CIRCUIT

[March 9, 2009]

CHIEF JUSTICE ROBERTS, with whom JUSTICE STEVENS,
JUSTICE BREYER, and JUSTICE ALITO join, concurring in
part and dissenting in part.

I agree with the Court that a federal court asked to
compel arbitration pursuant to §4 of the Federal Arbitra-
tion Act should "look through" the dispute over arbitrabil-
ity in determining whether it has jurisdiction to grant the
requested relief. But look through to what? The statute
provides a clear and sensible answer: The court may con-
sider the §4 petition if the court "would have" jurisdiction
over "the subject matter of a suit arising out of the contro-
versy between the parties." 9 U. S. C. §4.

The §4 petition in this case explains that the contro-
versy Discover seeks to arbitrate is whether "Discover
Bank charged illegal finance charges, interest and late
fees." App. 30. Discover contends in its petition that the
resolution of this dispute is controlled by federal law—
specifically §27(a) of the Federal Deposit Insurance Act
(FDIA), 12 U. S. C. §1831d(a) (setting forth the interest
rates a state-chartered, federally insured bank may
charge "notwithstanding any State constitution or stat-
ute which is hereby preempted"). Vaden agrees that the
legality of Discover's charges and fees is governed by

the FDIA.* A federal court therefore "would have juris-
diction . . . of the subject matter of a suit arising out of
the controversy" Discover seeks to arbitrate.  That suit
could be an action by Vaden asserting that the charges
violate the FDIA, or one by Discover seeking a declara-
tory judgment that they do not.

The majority is diverted off this straightforward path by
the fortuity that a complaint happens to have been filed in
this case.  Instead of looking to the controversy the §4
petitioner seeks to arbitrate, the majority focuses on the
controversy underlying that complaint, and asks whether
"the *whole* controversy," as reflected in "the parties' state-
court filings," arises under federal law.  *Ante*, at 16 (em-
phasis added).  Because that litigation was commenced as
a state-law debt-collection claim, the majority concludes
there is no §4 jurisdiction.

This approach is contrary to the language of §4, and
sharply restricts the ability of federal courts to enforce
agreements to arbitrate.  The "controversy" to which §4
refers is the dispute alleged to be subject to arbitration.
The §4 petitioner must set forth the nature of that dis-
pute—the one he seeks to arbitrate—in the §4 petition
seeking an order to compel arbitration.  Section 4 requires
that the petitioner be "aggrieved" by the other party's
"failure, neglect, or refusal . . . to arbitrate under a written
agreement for arbitration"; that language guides the
district court to the specific controversy the other party is
unwilling to arbitrate.

That is clear from the FAA's repeated and consistent

––––––––––

*Vaden has conceded that the FDIA completely pre-empts her state-
law counterclaims.  See 489 F. 3d 594, 604, n. 10 (CA4 2007).  What is
significant about that concession is not Vaden's agreement on the
jurisdictional question of complete pre-emption (which we need not and
do not address), cf. *ante*, at 19, but rather her agreement that federal
law—the FDIA—governs her allegation that Discover's charges and
fees are illegal.

use of the term "controversy" to mean the specific dispute asserted to be subject to arbitration, not to some broader, "full flavor[ed]" or "full-bodied" notion of the disagreement between the parties. *Ante*, at 17, and n. 16. In §2, for example, the "controversy" is the one "to [be] settle[d] by arbitration" and the one "to [be] submit[ted] to arbitration." 9 U. S. C. §2. In §10(a)(3), it is a ground for vacating an arbitration award that the arbitrator refused to hear evidence "pertinent and material to the controversy"—obviously the "controversy" subject to arbitration, or the arbitrator's refusal to consider the evidence would hardly be objectionable. In §11(c), an award may be modified if "imperfect in matter of form not affecting the merits of the controversy"—again, necessarily the controversy submitted to arbitration, and therefore the subject of the award.

There is no reason to suppose "controversy" meant the controversy subject to arbitration everywhere else in the FAA, but something quite different in §4. The issue is whether there is jurisdiction to compel arbitration to resolve a controversy; why would the pertinent controversy for assessing jurisdiction be anything other than the same one asserted to be subject to arbitration?

The majority looks instead to the controversy the state-court litigation seeks to resolve. This produces the odd result of defining "controversy" more broadly than the §4 petition itself. Discover's petition does not seek to arbitrate its state-law debt-collection claims, but rather Vaden's allegation that the fees Discover has been charging her (and other members of her proposed class) violate the FDIA. See App. 30. The majority does not appear to question that there would be federal jurisdiction over a suit arising out of the subject matter of that dispute. The majority finds no jurisdiction here, however, because "a federal court could not entertain Discover's state-law debt-collection claim." *Ante*, at 20, n. 19. There

is no jurisdiction to compel arbitration of a plainly federal controversy—the FDIA dispute—because there is no jurisdiction to compel arbitration of the debt-collection dispute. But why Discover should have to demonstrate federal jurisdiction over a state-court claim it does not seek to arbitrate is a mystery. Cf. *Moses H. Cone Memorial Hospital* v. *Mercury Constr. Corp.*, 460 U. S. 1, 19–21 (1983) (affirming federal-court jurisdiction over a §4 petition seeking to arbitrate only one of two disputes pending in state-court litigation); *Dean Witter Reynolds Inc.* v. *Byrd*, 470 U. S. 213, 218–221 (1985) (when litigation involves multiple claims, only some of which are covered by an arbitration agreement, district court must compel arbitration of the covered claims if so requested).

The majority's approach will allow federal jurisdiction to compel arbitration of *entirely* state-law claims. Under that approach the "controversy" is not the one the §4 petitioner seeks to arbitrate, but a broader one encompassing the "whole controversy" between the parties. *Ante*, at 16. If that broader dispute involves both federal and state-law claims, and the "originating" dispute is federal, *ibid.*, a party could seek arbitration of just the state-law claims. The "controversy" under the majority's view would qualify as federal, giving rise to §4 jurisdiction to compel arbitration of a purely state-law claim.

Take this case as an example. If Vaden had filed her FDIA claim first, and Discover had responded with a state-law debt-collection counterclaim, that suit is one that "could be litigated in federal court." *Ante*, at 15. As a result, the majority's approach would seem to permit Vaden to file a §4 petition to compel arbitration of the entirely state-law-based debt-collection dispute, because that dispute would be part and parcel of the "full flavor[ed]," "originating" FDIA controversy. *Ante*, at 16, 17. Defining the controversy as the dispute the §4 petitioner

seeks to arbitrate eliminates this problem by ensuring that the *actual dispute* subject to arbitration is federal.

The majority's conclusion that this controversy "is not one qualifying for federal-court adjudication," *ante*, at 19, stems from its mistaken focus on the existing litigation. Rather than ask whether a court "would have" jurisdiction over the "subject matter" of "a" suit arising out of the "controversy," the majority asks only whether the court *does* have jurisdiction over the subject matter of a *particular* complaint. But §4 does not speak of actual jurisdiction over pending suits; it speaks subjunctively of prospective jurisdiction over "the subject matter of a suit arising out of the controversy between the parties." 9 U. S. C. §4. The fact that Vaden has chosen to package the FDIA controversy in counterclaims in pending state-court litigation in no way means that a district court "would [not] have" jurisdiction over the "subject matter" of "a suit" arising out of the FDIA controversy. A big part of arbitration is avoiding the procedural niceties of formal litigation; it would be odd to have the authority of a court to compel arbitration hinge on just such niceties in a pending case.

By focusing on the sequence in which state-court litigation has unfolded, the majority crafts a rule that produces inconsistent results. Because Discover's debt-collection claim was filed before Vaden's counterclaims, the majority treats the debt-collection dispute as the "originating controversy." *Ante*, at 16. But nothing would have prevented the same disagreements between the parties from producing a different sequence of events. Vaden could have filed a complaint raising her FDIA claims before Discover sought to collect on any amounts Vaden owes. Because the "originating controversy" in that complaint would be whether Discover has charged fees illegal under federal law, in that situation Discover presumably *could* bring a §4 petition to compel arbitration

of the FDIA dispute. The majority's rule thus makes §4 jurisdiction over the same controversy entirely dependent upon the happenstance of how state-court litigation has unfolded. Nothing in §4 suggests such a result.

The majority glosses over another problem inherent in its approach: In many if not most cases under §4, no complaint will have been filed. See *Hartford Financial Systems, Inc.* v. *Florida Software Servs., Inc.*, 712 F. 2d 724, 728 (CA1 1983) (Breyer, J.) ("Normally, [§4] motions are brought in independent proceedings"). What to "look through" to then? The majority instructs courts to look to the "full-bodied controversy." *Ante*, at 17, n. 16. But as this case illustrates, that would lead to a different result had the state-court complaint not been filed. Discover does not seek to arbitrate whether an outstanding debt exists; indeed, Discover's §4 petition does not even allege any dispute on that point. See App. 28–41. A district court would therefore not understand the §4 "controversy" to include the debt-collection claim in the absence of the state-court suit. Under the majority's rule, the FDIA dispute would be treated as a "controversy" qualifying under §4 before the state suit and counterclaims had been filed, but not after.

The far more concrete and administrable approach would be to apply the same rule in all instances: Look to the controversy the §4 petitioner seeks to arbitrate—as set forth in the §4 petition—and assess whether a federal court would have jurisdiction over the subject matter of a suit arising out of that controversy. The controversy the moving party seeks to arbitrate and the other party will not would be the same controversy used to assess jurisdiction to compel arbitration.

The majority objects that this would allow a court to "hypothesiz[e] discrete controversies of its own design," *ante*, at 16, in an apparent effort to find federal jurisdiction where there is none. Not so. A district court

entertaining a §4 petition is required to determine what "a suit" arising out of the allegedly arbitrable controversy would look like. There is no helping that, given the statute's subjunctive language. But that does not mean the inquiry is the free-form one the majority posits.

To the contrary, a district court must look to the specific controversy—the concrete dispute that one party has "fail[ed], neglect[ed], or refus[ed]" to arbitrate—and determine whether *that* controversy would give rise to a suit under federal law. District courts do that sort of thing often enough; the exercise is closely analogous to the jurisdictional analysis in a typical declaratory judgment action. See *Franchise Tax Bd. of Cal.* v. *Construction Laborers Vacation Trust for Southern Cal.*, 463 U. S. 1, 19 (1983) (jurisdiction over a declaratory judgment action exists when, "*if* the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question" (emphasis added)). Looking to the specific controversy outlined in Discover's §4 petition (whether its fees violate the FDIA), it hardly requires "dream[ing]" to conceive of a lawsuit in which Vaden would claim the FDIA has been violated and Discover would claim it has not. *Ante*, at 18.

Nor would respondents' approach allow a §4 petitioner to simply "recharacterize" or "manufacture" a controversy to create federal jurisdiction. *Ante*, at 17. All of the established rules of federal jurisdiction are fully applicable in scrutinizing whether a federal court would have jurisdiction over a suit arising out of the parties' underlying controversy.

For example, a federal question must be presented by the specific controversy the §4 petitioner seeks to arbitrate, not by some hypothetical federal issue "lurking in the background." *Gully* v. *First Nat. Bank in Meridian*, 299 U. S. 109, 117 (1936). A district court could not compel arbitration of a state-law dispute by pointing to a

potential federal defense that the §4 petitioner is not seeking to arbitrate, because the "claim itself must present a federal question" to arise under federal law. *Skelly Oil Co.* v. *Phillips Petroleum Co.*, 339 U. S. 667, 672 (1950). Nor could a district court compel arbitration of a dispute that, though not federal in character, could lead to the filing of a federal counterclaim, for "a counterclaim . . . cannot serve as the basis for [federal] jurisdiction" of the state-law dispute itself. *Holmes Group, Inc.* v. *Vornado Air Circulation Systems, Inc.*, 535 U. S. 826, 831 (2002).

Accordingly, petitioners may no more smuggle state-law claims into federal court through §4 than they can through declaratory judgment actions, or any other federal cause of action. To the extent §4 brings some issues into federal court in a particular case that may not be brought in through other procedural mechanisms, it does so by "enlarg[ing] the range of remedies available in the federal courts[,] . . . not extend[ing] their jurisdiction." *Skelly Oil*, *supra*, at 671.

That is why the majority's recital of the basic rules of federal-court jurisdiction in Part II of its opinion is beside the point: No one disputes what those rules are, and no one disputes that they must be followed under §4 in deciding whether a federal court "would have jurisdiction . . . of the subject matter of a suit arising out of the controversy between the parties." The issue is instead *what* suit should be scrutinized for compliance with those rules. In defining "controversy" by reference to existing litigation, the majority artificially limits the reach of §4 to the particular suit filed. The correct approach is to accord §4 the scope mandated by its language and look to "a suit," arising out of the "subject matter" of the "controversy" the §4 petitioner seeks to arbitrate, and determine whether a federal court would have jurisdiction over such a suit.

The majority concludes by noting that state courts are obliged to honor and enforce agreements to arbitrate.

*Ante*, at 20. The question here, however, is one of remedy. It is a common feature of our federal system that States often provide remedies similar to those under federal law for the same wrongs. We do not, however, narrowly construe the federal remedies—say federal antitrust or civil rights remedies—because state law provides remedies in those areas as well. Cf. *Monroe* v. *Pape*, 365 U. S. 167, 183 (1961) ("It is no answer that the State has a law which if enforced would give relief").

\*    \*    \*

Discover and Vaden have agreed to arbitrate any dispute arising out of Vaden's account with Discover. Vaden's allegations against Discover have given rise to such a dispute. Discover seeks to arbitrate that controversy, but Vaden refuses to do so. Resolution of the controversy is governed by federal law, specifically the FDIA. There is no dispute about that. In the absence of the arbitration agreement, a federal court "would have jurisdiction . . . of the subject matter of a suit arising out of the controversy between the parties," 9 U. S. C. §4, whether the suit were brought by Vaden or Discover. The District Court therefore may exercise jurisdiction over this petition under §4 of the Federal Arbitration Act.