**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-1729**

---

DESIGN GAPS, INC.; DAVID GLOVER; EVA GLOVER,

Petitioners - Appellants,

v.

SHELTER, LLC; DR. JASON HIGHSMITH; KACIE M. HIGHSMITH,

Respondents - Appellees.

---

Appeal from the United States District Court for the District of South Carolina, at Charleston. Richard Mark Gergel, District Judge. (2:22-cv-04698-RMG)

---

Argued: September 26, 2024                    Decided: March 3, 2025

---

Before GREGORY and QUATTLEBAUM, Circuit Judges, and Terrence W. BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation.

---

Dismissed by published opinion. Judge Quattlebaum wrote the opinion, in which Judge Gregory and Judge Boyle joined.

---

**ARGUED:** Todd Maurice Hess, HESS LAW, PLLC, Wesley Chapel, North Carolina, for Appellants. Robert Andrew Walden, WOMBLE BOND DICKINSON (US) LLP, Charleston, South Carolina, for Appellees. **ON BRIEF:** James E. Weatherholtz, Andrea L. McDonald, WOMBLE BOND DICKINSON (US) LLP, Charleston, South Carolina, for Appellee.

QUATTLEBAUM, Circuit Judge:

This appeal involves a bevy of challenges to an arbitration award. Traditionally, such challenges would confront what our recently retired colleague Judge Motz[1] described as "a herculean task." *Warfield v. Icon Advisers, Inc*, 26 F.4th 666, 669 (4th Cir. 2022). But we must first answer an antecedent question—do federal courts have jurisdiction to consider these challenges? Under our recent decision in *Friedler v. Stifel, Nicolaus, & Co.*, 108 F.4th 241 (4th Cir. 2024), the answer is no. Accordingly, we dismiss.

## I.

Jason and Kacie Highsmith hired Shelter, LLC—owned by Ryan and Jenny Butler—to manage a home renovation project.[2] Then, on August 18, 2020, the Highsmiths contracted with Design Gaps, Inc.—owned by Eva and David Glover—to design and install cabinets and closets.[3] They signed separate contracts for the cabinets and closets, but both mandated that disputes be resolved through arbitration.

The contracts did not contain an explicit completion date. But when the Highsmiths said they wanted the project completed within four to eight weeks, Design Gaps said they

---

[1] Judge Motz served our Court with distinction for over 28 years. Among her many virtues, Judge Motz displayed a keen intellect, a gift for elegant writing and a warm personality. We will miss her greatly but are indebted to her distinguished service to our Court, our profession and our country.

[2] Shelter is an appellee along with the Highsmiths. For convenience, we refer to the appellees as "the Highsmiths."

[3] Likewise, the Glovers are appellants along with Design Gaps. For the same reason, we refer to the appellants only as "Design Gaps."

could do it. They did not. As delays mounted, Design Gaps continued to offer excuses and new deadlines that were never met. When the project was still unfinished more than eight months later, the Highsmiths decided to find someone else. They terminated both contracts with Design Gaps and hired Distinctive Design, LLC to finish the project. But before officially hiring Distinctive Design, the Highsmiths met with its employee, Bryan Reiss, and shared with him copyrighted drawings for cabinets and closets that Design Gaps had created for the Highsmiths' renovation.

After the Highsmiths hired Distinctive Design, they filed a demand for arbitration against Design Gaps alleging breach of contract, promissory estoppel, fraud and piercing the corporate veil. Design Gaps counterclaimed for negligence, breach of contract, fraudulent misrepresentation, failure to mitigate damages, tortious interference, civil conspiracy, conversion, unfair and deceptive trade practices, quasi-contract and violation of the Copyright Act.

The arbitrator held a three-day merits hearing. The Highsmiths called ten witnesses, including themselves, the Butlers and Bryan Reiss. Design Gaps' roster was shorter. Its only witness was David Glover. Before the hearing ended, the arbitrator asked the parties if they had an adequate opportunity to fully present their relevant evidence. Both parties answered yes.

Afterward, the arbitrator issued a nine-page award outlining the factual and procedural history, findings of fact, conclusions of law and damages. The two most important causes of action for purposes of this appeal are the breach of contract claim and the copyright claim. Regarding the breach of contract claim, the arbitrator explained:

3

While the contracts did not contain specified completion dates, Design Gaps did provide a series of completion dates, which it did not meet. During the hearing, Design Gaps set out a number of reasons for the delays which it argued were beyond its control. However, it continued to provide unreliable completion dates to the Claimants. The repeated failure to meet the many dates promised for completion justifies the termination of the contracts.

J.A. 124. Regarding the copyright claim, he added:

Respondents gave to the Claimants their drawings for the cabinets. Obviously, this was for Claimants' review, approval, and use during the construction process. Claimants were free to use the drawings to measure the compliance of Design Gaps with these drawings and its obligation to install the designed cabinets in accordance with its contractual obligation. Respondents failed to enter into evidence a valid copyright registration; however, even if they had, Claimants certainly established fair use of the design work, especially considering that Shelter did not profit from the design. The sharing of a pdf of the design did not materially impair the marketability of the design. Respondents failed to prove that Claimants or anyone else converted its designs for this project. Bryan Reiss of Distinctive Design confirmed that he did not use Design Gaps' designs for the cabinets. I am convinced by Reiss's testimony and the exhibits provided that any similarity in the designs is due to the limitations of the space and the client's desired layout. Therefore, there has been no violation of any copyright which Respondent may have had.

J.A. 125–26. Ultimately, the arbitrator denied relief on Design Gaps' counterclaims and declared the Highsmiths the prevailing party, awarding them $152,884 in damages plus $17,411.83 in arbitration costs and $126,113.34 in attorney's fees.

Design Gaps petitioned the district court to vacate the arbitration award, alleging that the arbitrator manifestly disregarded the law and failed to issue a reasoned award. The Highsmiths moved to confirm the award. The district court issued a single-document opinion and order denying the petition to vacate the arbitration award and granting the Highsmiths' motion to confirm the arbitration award. Later, the court issued an opinion

4

and order granting the Highsmiths' motion for attorney's fees. A month later, Design Gaps noticed an appeal of both orders.

On appeal, Design Gaps advances two reasons the district court should have vacated the arbitration award. First, it argues that the arbitrator did not issue a "reasoned award." Second, Design Gaps argues that the arbitrator manifestly disregarded the law by (1) failing to consider a copyright registration of the plans created by Design Gaps; (2) ignoring basic copyright law; (3) failing to join Distinctive Design, Bryan Reiss and Jenny Butler in the arbitration despite their interest in the copyright question; and (4) imposing contractual deadlines upon Design Gaps that were outside the contract.

The Highsmiths moved to dismiss, arguing the appeal of the attorney's fees order was premature while the appeal of the award confirmation was too late and thus untimely. We granted the motion as to the attorney's fees order because there was no appealable final decision until the amount of the fee award was fixed. But as for the motion on the arbitration award confirmation, the district court did not set out its judgment in a separate document as required by Federal Rule of Civil Procedure 58(a). Thus, by rule, the 30-day appeal period had not begun to run. Accordingly, we denied the motion to dismiss the arbitration confirmation order because the notice of appeal was in fact timely.

But that determination does not mean we can proceed to the merits of Design Gaps' appeal. That's because, after the parties' briefing, we issued *Friedler*. That case altered the way we assess federal jurisdiction over motions to vacate arbitration awards. So, we ordered the parties to brief the question of whether there is federal jurisdiction here considering *Friedler*. Neither party has persuaded us there is.

5

## II.

We have an independent obligation to determine our jurisdiction. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). And *Friedler* established a new standard for how we assess our jurisdiction over motions to vacate arbitration awards. 108 F.4th at 250.

In *Friedler*, customers brought an arbitration claim against stockbrokers alleging various state and federal causes of action relating to mismanagement of their brokerage accounts. *Id.* at 244. The arbitrator ruled for the brokers. *Id*. After that, the customers filed an action in federal court seeking to vacate the award. They argued the arbitrator manifestly disregarded the law, especially federal securities law. *Id*. After the district court denied the petition, the customers appealed. *Id*. at 245. In assessing our jurisdiction, we noted that previously, we "looked through" such petitions to see if there was federal jurisdiction over the underlying dispute. *Id*. at 244. Under that approach, the fact that the underlying dispute involved federal securities law, over which federal courts have exclusive jurisdiction, would have meant that federal jurisdiction extended over the petition to vacate.

But we said that the Supreme Court's recent decision in *Badgerow v. Walters*, 596 U.S. 1, 9 (2022) abrogated that look-through approach. In *Badgerow*, the Court held that the Federal Arbitration Act's text indicated that the look-through approach to jurisdiction applies only to motions to compel arbitration awards, not motions to vacate or confirm. *Id*.

at 11.[4] For such motions, the Court explained, jurisdiction depends on whether the petition implicates federal jurisdiction beyond the FAA. *Id*. at 8. In other words, was there an independent basis for federal jurisdiction such as diversity of citizenship or a federal question? Without that, the Court said a motion to vacate an arbitration award is really just a contract dispute, which typically involves state law. *Id*. at 9.

Thus, following *Badgerow*, we held in *Friedler* that there was no federal jurisdiction over the customers' petition to vacate the arbitration award. 108 F.4th at 250. We held that it was, at its core, "no more than a contractual resolution of the parties' dispute." *Id*. at 246 (quoting *Badgerow*, 596 U.S. at 9). The face of the petition to vacate, we explained, did

---

[4] Section 4, which governs motions to compel, states:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, *save for such agreement*, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4 (emphasis added). The Supreme Court has emphasized that Sections 9 and 10, which control motions to vacate and confirm, lack this "save for" language. It has justified treating such motions differently based upon this different language. "The phrase save for the arbitration agreement indicates that the district court should assume the absence of the arbitration agreement and determine whether the court would have jurisdiction without it." *Badgerow*, 596 U.S. at 10 (cleaned up) (citing *Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009)).

not implicate the merits of the federal questions, nor did it otherwise assert an independent basis for jurisdiction. *Id.*[5]

According to the parties, we have federal jurisdiction over this case despite *Friedler*. That's because they read *Friedler* to say that if the petition to vacate involves copyright infringement claims, the Copyright Act's exclusive jurisdiction over civil actions arising under that Act provides an independent basis for federal jurisdiction. Both parties argue that this case requires a determination of copyright infringement and a fair use defense, both of which district courts enjoy exclusive original jurisdiction over. *See* 28 U.S.C. § 1338(a).

But *Friedler* forecloses these arguments. While discussing how a federal statute might provide jurisdiction for a petition to vacate an arbitration award, we stated,

> *Badgerow* suggests that there may be federal statutes beyond the FAA itself that would "entitle[] the applicant to relief" and thus support jurisdiction. 596 U.S. at 9. The Sixth Circuit, for example, has held that the Labor Management Relations Act (LMRA) is such a statute. *Greenhouse Holdings, LLC v. Int'l Union of Painters and Allied Trades Dist. Council 91*, 43 F.4th 628, 631 (6th Cir. 2022). But it reached that conclusion because the LMRA confers jurisdiction over "suits for violation[s] of contracts between an employer and a labor organization," *id.* (citing 29 U.S.C. § 185(a)), and it was "well-established that the LMRA authorizes courts to enforce or vacate labor arbitration awards," *id.* (cleaned up).

---

[5] *Friedler* discussed only motions to vacate. Here, the district court denied Design Gaps' motion to vacate, which brings this case under *Friedler*. But even if we were to ignore the motion to vacate and look instead to the Highsmiths' motion to confirm that the district court granted, *Badgerow* compels the same result. "The question presented here is whether that same 'look-through' approach to jurisdiction applies to requests to confirm or vacate arbitral awards under the FAA's Sections 9 and 10. We hold it does not." *Badgerow*, 596 U.S. at 5.

> We're aware of no such grant of jurisdiction in the SEC Act, and the parties don't argue otherwise. Although the Act grants federal courts exclusive jurisdiction over "violations" of the Act and "all suits in equity and actions at law brought to enforce any liability or duty created by" the Act, 15 U.S.C. § 78aa(a), it doesn't authorize vacatur of an award that the parties agreed to have settled by an arbitrator.
>
> Thus, even assuming the petition adequately alleged that Devlin and Stifel violated the Act, the Act itself wouldn't "entitle[] the applicant to relief," *Badgerow*, 596 U.S. at 9—here, vacatur of the arbitration award.

*Friedler*, 108 F.4th at 247–48.

That means the fact that the petition to vacate involves federal copyright law is beside the point. The petition to vacate in *Friedler* involved federal securities law. But that was not enough. Likewise, the fact that the Copyright Act provides for exclusive federal jurisdiction over alleged violations of that Act doesn't matter either. The SEC Act grants federal courts the same exclusivity, but that was no ground for federal jurisdiction in *Friedler*. We see no way to distinguish the Copyright Act from the SEC Act, and the parties do not identify one. Thus, *Friedler* compels a holding of no subject matter jurisdiction.[6]

---

[6] After *Friedler*, what suffices to "entitle[] the applicant to relief" and support jurisdiction? *See Badgerow*, 596 U.S. at 9. Stating that § 1331 is not "a dead letter as a basis for jurisdiction over petitions to vacate arbitration awards," *Friedler* identified two aspects of *Greenhouse Holdings*, 43 F.4th at 631, that justified jurisdiction over that petition to vacate an arbitration award involving the LMRA: (1) the LMRA confers jurisdiction over "suits for violation[s] of contracts between an employer and a labor organization," and (2) it was "well-established that the LMRA authorizes courts to enforce or vacate labor arbitration awards." 108 F.4th at 247–48.

Presumably, it is the fact that the LMRA specifies contracts—and contracts are where arbitration agreements are made—that provides potential jurisdiction for motions to vacate involving the LMRA. If not, the LMRA does not seem materially different from other federal statutes that grant specific subject matter jurisdiction. After all, like the Copyright Act and the SEC Act, the text of the LMRA "doesn't authorize vacatur of an

## III.

*Friedler* altered the way we assess federal jurisdiction over petitions to vacate and confirm arbitration awards. And it controls here. Thus, for the reasons explained above, Design Gaps' appeal is,

*DISMISSED*.

---

award that the parties agreed to have settled by an arbitrator." *Id.* at 248. The second aspect of *Friedler*'s reasoning is that it is "well-established that the LMRA authorizes courts to enforce or vacate labor arbitration awards." *Id*. at 247–48. *Greenhouse* cited *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 451 (1957), which held that "the agreement to arbitrate grievance disputes, contained in this collective bargaining agreement, should be specifically enforced." Is that a separate factor that must be met or just an observation related to the fact that the LRA specifies contracts? If so, does that mean that, post-*Friedler*, the Supreme Court must specifically say that a statute authorizes the enforcement of arbitration awards? Or is circuit case law sufficient? If circuit case law is the answer, we have not located any saying as much regarding the Copyright Act. The contours of what supports federal jurisdiction for petitions to vacate will have to be defined in future cases. But for this one, *Friedler* requires that we dismiss for lack of jurisdiction.